THE STATE, GEORGE A. HALSEY, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK, THE RAPID TRANSIT STREET RAILWAY COMPANY OF THE CITY OF NEWARK ET AL.

A resolution of common council, giving consent to a street railway to place posts and stretch wires in a street, and prescribing the size and location of the poles, and limiting the speed of the railroad when operated by electricity, is a street regulation, which, under the charter of Newark, must be by ordinance.

On *certiorari.*

This writ of *certiorari* brings up a resolution passed by the common council of Newark on December 17th, 1890.

The resolution, in its first clause, purported to grant to the Rapid Transit Street Railway Company of the city of Newark, and to several other companies, the right to use electric

motors to be supplied with electricity from overhead wires supported by posts to be placed in the street.

The second clause regulates the distance between the posts; imposes upon the companies the duty of providing electric lights upon the posts in the middle of the street; also the duty of establishing a system of transfers; also of maintaining gates upon the sides of the platforms of the cars. It limits the maximum rate of speed of the cars. It provides for a substitution of some other system for the overhead system under certain named conditions. These are the main points touched by the resolution.

The cause involves the same question as that of Green *v.* Trenton, and the two cases were argued together, the testimony taken in the present case being by consent used in both causes.

Argued at June Term, 1891, before Justices DEPUE, DIXON and REED.

For the prosecutor, *John R. Emery.*

For the defendants, *Riker & Riker, Anthony Q. Keasbey* and *Theodore Runyon.*

The opinion of the court was delivered by

REED, J. The main question discussed in this case is whether the common council of the city of Newark possessed the power to pass the resolution, the substance of which has been set out. The power to pass this resolution was claimed to exist in the terms of the act of 1886 (*Rev. Sup., p.* 369) already set forth in the opinion in the preceding case of Green *v.* Trenton.

The ordinance in that case conferred privileges similar to the ordinance in this.

All that was said in the previous case relative to the scope of the act of 1886 is applicable in this case.

The result is that the resolution must be regarded as a nullity.

But if it should be conceded that there was power in the common council to deal with the subject-matter of the resolution, I think such power should have been exerted by ordinance.

The grants, restrictions and limitations contained in the resolutions were regulative of the use of the streets.

That the regulation of streets shall be by ordinance or by-law, and not by resolution, seems to be the necessary conclusion from the language of section 30, paragraph 7, and section 96, paragraph 3, of the charter of Newark. *Pamph. L.* 1857, *pp.* 132, 162; *State* v. *Hoboken*, 6 *Vroom* 205, 335; *Hunt* v. *Lambertville*, 16 *Id.* 279; *People's Gas Light Co.* v. *Jersey City*, 17 *Id.* 297.

In regard to the right of the prosecutor to sue out this writ, it appears that the poles in front of his property were to be placed in the middle of the street. He owns to the middle of the street.

In Springfield avenue the poles were placed, or some of the poles were placed, entirely upon his land. If placed in accordance with the directions of the resolution, each pole would be partly upon his land and the arms upon the post would sweep over it.

This gives the prosecutor a footing in court to try the legality of the resolution.

The resolution is set aside.