FREDERICK H. LEVY ET AL., PLAINTIFFS IN ERROR, v. THE CITY OF ELIZABETH AND THE SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, DEFENDANTS IN ERROR.

Submitted March 13, 1911—Decided June 28, 1911.

1. After the allowance of a writ of *certiorari*, the *status* of a prosecutor will be presumed in the absence of proof to the contrary.
2. A municipal charter conferring on the council power to "make, establish, publish and modify, amend or repeal ordinances, rules, regulations, and by-laws" for certain specified purposes, gives no power to the council to act in that regard by resolution, but only by ordinance.
3. When a dismissal by the Supreme Court of a *certiorari* to review a municipal proceeding is reversed on error, the Court of Errors and Appeals will render such judgment upon the proceedings brought up by the *certiorari* as the Supreme Court should have given upon the merits.

On error to the Supreme Court, whose opinion is reported in 50 *Vroom* 456.

For the plaintiffs in error, *Patrick H. Gilhooly, Samuel Koestler* and *Alan H. Strong.*

For the city of Elizabeth, *James C. Connolly.*

For the Society for Prevention of Cruelty to Animals, *J. Edward Ashmead* and *Frederick J. Faulks.*

The opinion of the court was delivered by

PARKER, J. The writ of *certiorari* awarded by the Supreme Court, and afterwards dismissed by the judgment of that court now before us on writ of error, brought up a resolution of the city council of the city of Elizabeth, adopted June 7th, 1909, as part of a report by the committee on streets and highways. Its language is as follows : "Resolved, that permission be and the same is hereby granted to the Society for the Prevention of Cruelty to Animals to erect two fountains, one at the junction of North Broad street and Westminster avenue, and one at the junction of Elizabeth avenue and Third street."

The approval by the mayor of resolutions is not required under the city charter. In fact, he seems to have been opposed to this particular resolution, and urged its reconsideration. It was referred back to the committee and a hearing had; but upon the writ in this case being allowed the committee reported back the resolution without recommendation, and no further action was taken thereon, so far as appears.

A preliminary objection is raised that the prosecutors have no interest which entitles them to prosecute the writ in this case. Prosecutor Rankin is an abutting property owner on the west side of Westminster avenue, and prosecutor Levy on the east side of Broad street just opposite; and the proposed location of one "fountain" is immediately between these properties at the fork of these two streets. Some question is raised as to their ownership of the land covered by the highways; but we deem it unnecessary, if not improper, to go into the question

of their *status* at this time, because it is evident from an examination of the case and of the opinion in the Supreme Court that no question of such *status* was raised in that court upon the evidence or even on the argument.

The rule appears to be settled that after the allowance of a writ of *certiorari*, the *status* of a prosecutor will be presumed in the absence of proof to the contrary. *Avon* v. *Neptune City*, 28 *Vroom* 701. "On final hearing," said Mr. Justice Dixon, speaking for this court in that case, "his right to prosecute is not primarily involved, unless the return to the writ or the proofs taken under it affirmatively show his lack of interest in the controversy." Avon *v.* Neptune City is the authority relied on in the later Supreme Court cases of *Biddle* v. *Riverton*, 29 *Id.* 289; *Dickinson* v. *Jersey City*, 39 *Id.* 99, 102; *Lantry* v. *Sage*, 40 *Id.* 560, and *Rehill* v. *East Newark*, 44 *Id.* 220, in dealing with this question. We find nothing in the case at bar to show that the *status* of prosecutors was challenged before, or indeed at the final argument in the court below. It is challenged here for the first time; and as the Supreme Court would have been bound under the ruling in Avon *v.* Neptune City, as well as its own decisions, to refuse to consider it, there is still better reason for such refusal at this stage.

Coming to the merits of the case, the Supreme Court held that the power to grant such permission as the resolution purports to grant, was vested in the council by section 31, placitum 7 of the city charter (*Pamph. L.* 1863, *p.* 118) "to prescribe the manner in which corporations or persons shall exercise any privileges granted to them in the use of any street * * * in said city," &c., and by placitum 13 of the same section giving power to preserve the aqueducts in said city and to make and regulate wells, pumps and cisterns in the public streets and squares. It held, further, that the resolution in question was not an unreasonable exercise of the power conferred; that the charter did not prescribe that such power should be exercised by ordinance, and, consequently, it could be exercised by resolution; overruling the argument of prose-

cutors based on one of their filed reasons, that the power if given at all must be exercised by ordinance.

Without going into the other points involved, we think the Supreme Court erred in holding that the power to permit the erection of these fountains, if contained in the language of the charter, could be exercised by resolution. The section in question, number 31, is the comprehensive one occurring frequently in charters of this character, and all the sub-sections therein, classifying the various powers of the council, are referred back to these opening words of the section: "31. And be it enacted, that the city council shall have power within the said city to make, establish, publish and modify, amend or repeal ordinances, rules, regulations and by-laws for the following purposes." This language is not unusual, and its meaning has been settled by a course of decisions in the Supreme Court. It occurs, for example, in the charter of Newark (*Pamph. L.* 1857, *p.* 131, § 31); of Camden (*Pamph. L.* 1871, *p.* 224, § 30); of Cape May (*Pamph. L.* 1875, *p.* 213, § 19); of Lambertville (*Pamph. L.* 1868, *p.* 957, § 21), and doubtless many others. In the case of Lambertville, the power thus given was relied on to support a resolution to permit private individuals to lay a sewer in a street. The Supreme Court said, through Mr. Justice Dixon: "Even under the twenty-first section it is not evident that an ordinance would not be required. The language 'ordinances, rules, regulations and by-laws' is certainly, to some extent, tautological, for 'ordinances' and 'by-laws' are not distinguishable; and it is doubtful whether 'rules' and 'regulations,' on the subjects embraced in this section, are not merely equivalent words." *Hunt* v. *Lambertville,* 16 *Vroom* 279.

In *Halsey* v. *Newark,* 25 *Vroom* 102, it was held that the power of the council of the city of Newark to regulate the use of streets, under the same charter language, must be exercised by ordinance.

The ruling was followed and reiterated in the case of Camden (*West Jersey Traction Co.* v. *Shivers,* 29 *Vroom* 124); and again in that of Cape May (*Essen* v. *Cape May,* 43 *Id.* 433). It is apparent, therefore, that the doubt expressed by

Mr. Justice Dixon in the passage quoted was resolved later by the Supreme Court in favor of a construction that the words "ordinances, rules, regulations and by-laws" were intended to be synonymous, or at least that the "rules, regulations and by-laws" for the multifarious purposes of the enabling section were to be promulgated by ordinance and could not be made effective by resolution. Irrespective of the inherent merit of this construction, a ruling uniformly made by the Supreme Court over a course of years should not be set aside by us except for cogent and important reasons (see *Butler* v. *Commonwealth Tobacco Co.,* 4 *Buch.* 423), and the fact that the legislature, after the decisions in *Hunt v. Lambertville* and *Halsey v. Newark,* passed a general city charter referendum act containing identical language (*Pamph. L.* 1904, *p.* 79, § 16), lends force to the construction placed on it by the court. Moreover, an examination of the various subjects of regulation embraced in the section will show that most of them are manifestly unsuitable for control by mere resolution; as for example, the suppression of disorderly houses, regulation of shows, ascertainment of boundaries of streets, regulation of stoop lines, fast driving, speed of trains, laying of street railway tracks, provision for street lighting, imposition of dog taxes, licensing of various occupations, collection of taxes, and so on. It cannot be that the legislature in framing section 31 intended that all of the matters covered by that section might be dealt with by either ordinance or resolution; or that notwithstanding the provision that ordinances must receive the approval of the mayor, or if vetoed, pass over the veto by a two-thirds vote, it might be left to the judgment of the council to select which of these subjects, a few of which have been mentioned, should be treated by ordinance and which by resolution. Such a construction would vest absolute control in a majority of the council and make the office of mayor a sinecure.

We adopt, therefore, the construction placed on this language of section 31 by the Supreme Court in the cases cited, and hold that the powers vested in the council by that section must be exercised by ordinance. How far the exercise of such powers must be by special ordinances to meet the exigencies

of particular cases, and to what extent such exercise may take the form of general ordinances embodying codes of rules and regulations whose practical administration is committed to municipal agents and officers, as in the case of licenses, preservation of the public peace, nuisances, obstructions in streets, and kindred subjects of police regulation, are questions not before us for decision. Assuming that under some provision of section 31 the council had power to permit the installation of the drinking fountains in question within the limits of the public streets—a point not necessary to be decided—it could not exercise such power by resolution but only by ordinance. Whether such ordinance should be special, or might be general in character, is also unnecessary to decide, as no ordinance of any kind was passed in this case.

The judgment of the Supreme Court dismissing the writ will be reversed, and this court will render such judgment as should have been given in the Supreme Court on the merits. *Hoxsey* v. *Paterson*, 10 *Vroom* 489. The resolution will be set aside, with costs.

*For affirmance*—SWAYZE, BOGERT, VREDENBURGH, JJ.   3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, PARKER, VOORHEES, CONGDON, SULLIVAN, JJ.   8.