## IRVING NAT. BANK v. LAW.

(Circuit Court of Appeals, Second Circuit. November 9, 1925.)

### No. 46.

**1. Courts ⟨⟩366(1)—Construction of local statutes by state intermediate appellate court not conclusive on Circuit Court of Appeals.**

While conclusions of intermediate appellate courts of state as to construction of state statutes are accorded respect, they are not so conclusive on Circuit Court of Appeals as to relieve latter from duty of rendering decision on its own understanding of such statutes.

**2. Limitation of actions ⟨⟩169—Under statute, persons sued in state exposed to no longer period of limitations than law of place where cause of action arose.**

Civil Practice Act N. Y. § 13, providing that, when a cause of action arises outside of New York, "an action cannot be brought * * * after the expiration of the time limited by the laws of a state or country where the cause of action arose," *held* to make applicable in New York the period of limitations prescribed by laws of state where cause of action arose and not to limit suits against persons in New York to those who could be sued in state where cause of action arose.

In Error to the District Court of the United States for the Southern District of New York.

Action by Herbert E. Law against the Irving National Bank. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

On rehearing, judgment of lower court affirmed 10 F.(2d) 721.

Writ of error to a judgment in the sum of $6,969.80, entered upon a directed verdict in an action at law.

The action was begun on September 29, 1920, and was in substance as follows: Law, the plaintiff, a citizen of California, subscribed for stock in the Hydrox Chemical Company of California. His subscription was procured by the fraudulent representations of one Hawk and the Hydrox Chemical Company of New York, which acted as an agent of the defendant, a New York corporation. Law paid for his stock on the 23d of August, 1915, in reliance upon the misrepresentations, and received the shares. On the 15th of September, 1915, he discovered that he had been defrauded.

The defendant, as the holder of notes of the Hydrox Chemical Company of California, brought action in California against Law, through one Goodspeed, upon Law's stockholder's liability under the laws and Constitution of California. This action failed upon the ground that the shares had

been issued to Law by fraud, to which the defendant was privy through the Hydrox Chemical Company of New York. The judgment dismissing this complaint was appealed on writ of error to the Circuit Court of Appeals for the Ninth Circuit, and affirmed in September, 1919. In February, 1917, Law learned that the misrepresentations of the Hydrox Chemical Company of New York had been ratified and confirmed by the defendant, which thereby was in privity with the fraud.

The action is to recover for the money paid by Law on his subscription fraudulently procured. Under the laws of California the period of limitations for such an action is three years. It may be assumed for argument that under the decisions of the Supreme Court of California the defendant's continuous residence in New York tolled the local statute of limitations, and that on September 29, 1920, an action would have lain against it in the courts of that state.

Morris, Plante & Saxe, of New York City (Guthrie B. Plante, Merton E. Lewis, and David S. Elkins, all of New York City, of counsel), for plaintiff in error.

Platt, Field & Taylor, of New York City (Martin Taylor and Almet Jenks, Jr., both of New York City, of counsel), for defendant in error.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] At the outset the question arises whether a decision of the Appellate Division of the Supreme Court of New York upon the meaning of a New York statute is so conclusive as to relieve us from the responsibility of any independent consideration, as a decision of the Court of Appeals of that state confessedly would do. So far as we have found, the Supreme Court has never directly passed upon that question, and it may therefore be regarded as not conclusively settled. However, the Circuit Court of Appeals of the Sixth (U. S. Tel., etc., Co. v. Central Union Tel. Co., 202 F. 66, 122 C. C. A. 86) and of the Eighth Circuits (Federal Lead Co. v. Swyers, 161 F. 687, 88 C. C. A. 547; Anglo-American, etc., Co. v. Lombard, 132 F. 721, 742, 68 C. C. A. 89; Westerlund v. Black Bear Mining Co., 203 F. 602, 609, 121 C. C. A. 627) have held that a federal court is bound to conform only with the construction of a local statute of the highest court of the state. This has also been held by two District Courts. Continental, etc., Co. v. In-terborough R. T. Co., 165 F. 945, 959; In re Gary, 281 F. 218, 222. The Circuit Court of Appeals for the Sixth Circuit, in Reichardt v. Hill, 236 F. 817, 822, 150 C. C. A. 79, 84, "In view of the apparent harmony" of the decisions of the intermediate appellate court and the Supreme Court of the state followed the rulings of the former, but we do not understand that it meant to overrule its earlier decisions or to treat the rulings of an intermediate state court as conclusive.

In Re Gilligan, 152 F. 605, 81 C. C. A. 595, the Circuit Court of Appeals for the Seventh Circuit appears to have thought the decision of a court of intermediate appeal in Indiana conclusive, because it was final, unless certified or transferred to the Supreme Court of the state, or unless it involved $6,000. So understood, the case stands alone, so far as we can find. It seems to us that the mere fact is not relevant that in the especial case no appeal was possible. We understand the doctrine to mean that the highest court of the state, by declaring what a statute means, settles it, because there is no authority which can gainsay it. Yet, however conclusive between parties to a suit, the decision of a lower court is of course not authoritative upon the highest court; the statute necessarily remains in nubibus, and its construction may be as it will. Therefore, while it is hardly necessary to say that any conclusion of the intermediate appellate courts of New York we read with the great respect to which they are entitled, suitors are entitled to demand of us a decision based upon our own understanding of such statutes as are pertinent to their controversies, and this is a duty which we cannot properly avoid.

[2] The question at bar is of the meaning of section 13 of the Civil Practice Act of New York, which, so far as relevant, provides that when a cause of action, as in the case at bar, arises outside New York, "an action cannot be brought * * * after the expiration of the time limited by the laws of a state or country where the cause of action arose." Two views are possible of this provision, one, that the law exposed persons sued in New York to no longer a period of limitation than did the law of the place where the cause of action arose; the other, that no one should be sued in New York if at the time he could not be sued in the state where the cause of action arose. The point arose in Isenberg v. Rainier, 145 App. Div. 256, 130 N. Y. S. 27 (1st Dept.), and it was ruled flatly that the second was the proper view. It has arisen in the same department

three times since, and each time the court recognized the ruling as authoritative, though in no case was it necessary to the disposition of the cause. Dalrymple v. Schwartz, 177 App. Div. 650, 164 N. Y. S. 496; Whiting v. Miller, 188 App. Div. 825, 176 N. Y. S. 639; Stern v. Auerbach, 203 App. Div. 681, 197 N. Y. S. 295. It is certainly the established rule in that department, but the point has never been passed on in any other, nor by the Court of Appeals. In Jacobus v. Colgate, 217 N. Y. 235, 111 N. E. 837, Ann. Cas. 1917E, 369, that court very clearly intimated that the ruling was to be deemed open, should the point arise. Judge Cardozo spoke obiter of the statute as incorporating "into our law the period of limitation of the state where the cause of action arose," a form of statement which seems to us much more consonant with the first than with the second view mentioned above.

It appears to us, with the greatest deference, that the view adopted in Isenberg v. Rainier, would in its consequences substantially defeat what was the purpose of the provision. We must remember that in any case the limitations of the New York statute apply, and that therefore section 13 has no purpose at all, except in so far as it shortens those periods. To hold that it shortens the period only for those who are already protected from suit in the foreign state involves the result, broadly, that, while residents of the foreign state may invoke it, residents of New York or elsewhere may not, because it is generally only during residence within a state that limitations run. That is indeed a conceivable view to take, but it seems to us highly improbable. We should suppose that an important part, at any rate, of the purpose of the section was to put residents of New York, who had incurred a liability in another state, on a parity with residents of that state who remain there. This in practice is impossible, unless the foreign period of limitation is taken as prescribed for such cases. The conclusion of the section, making it inapplicable when the plaintiff is a resident, fortifies a parochial interpretation of the section as a whole.

Nor does the language seem to us well chosen for the opposite construction. It says that no action may be brought in New York "after the expiration of the time limited by the laws" of the foreign state for such an action. That is scarcely equivalent to saying that no action shall be brought, unless an action could be brought at the same time in the foreign state. "The expiration of the time limited by the laws" of a state, to us, as apparently it meant to Judge Cardozo, most naturally means the periods prescribed in such laws, and merely substitutes these pro hac vice for the periods prescribed in the New York statute. We are of course aware of the danger of bearing too hard upon the words of a statute, but the case is one in which language and purpose unite, and where another construction would leave the section almost brutum fulmen. While cases have indeed arisen which, so construed, it would cover, they must be rare, and, as we have said, they are most unlikely to occur in the case of any but recent residents of New York. Those especially to be protected are not. It had a discernible purpose of much broader scope, and meant, we think, that the resident of a foreign state must prosecute his claims in New York within the same period that was open to him where the cause of action arose. That imposed no hardship upon foreign plaintiffs substantially greater than the laws of their own state.

Judgment reversed, and new trial ordered.