**STEINBACH et al. v. METZGER et al.**
No. 4900.

Circuit Court of Appeals, Third Circuit.
Jan. 23, 1933.

Andrew G. Smith, of Pittsburgh, Pa., for appellants.

William A. Schnader, Atty. Gen., David Glick, Sp. Deputy Atty. Gen., and Penrose Hertzler, of Pottsville, Pa., for appellees.

Before WOOLLEY and THOMPSON, Circuit Judges, and WELSH, District Judge.

WOOLLEY, Circuit Judge.

The Act of June 3, 1911, of the Commonwealth of Pennsylvania (P. L. 639, § 1 [63 PS § 401]) provides that:

"* * * It shall not be lawful for any person in * * * Pennsylvania to engage in the practice of medicine and surgery, * * * or to assume the title of doctor of medicine and surgery, * * * or to diagnose diseases * * * unless he or she has first fulfilled the requirements of this act and has received a certificate of licensure from the Bureau of Medical Education and Licensure created by this act. * * *"

The act further provides that any person wilfully violating its provisions shall be indicted and upon the first conviction be subject to fine or imprisonment and upon the second conviction to fine and imprisonment for named sums and terms.

In an attack not upon the constitutionality of this act but upon the construction placed upon it by the appellate courts of Pennsylvania that they come within its provisions, the plaintiffs, practitioners of the profession of chiropractic, filed a bill on the equity side of the District Court of the United States for the Western District of Pennsylvania in which they aver, inter alia, that the profession of chiropractic is a healing profession with principles and therapeutics distinct from those of other healing professions, having to do chiefly with the recognition of the brain and nervous system, the dependence of the nervous system upon the normal functioning of the organs of digestion, assimilation, respiration and circulation, and the restoration of normal conditions by a scientific manipulation of the spinal vertebræ.

Continuing, the plaintiffs by their bill aver that the profession is a skilled and honorable one, practiced by many citizens of Pennsylvania upon a large number of other citizens who believe in their system and desire their ministrations; that the statute in question provides for the licensure of those engaged in the practice of medicine and surgery but not of those engaged in the practice of chiropractic; that in practicing the profession of chiropractic without license from the Pennsylvania Bureau of Medical Education and Licensure, numerous chiropractors have been and still others are threatened to be indicted and convicted for violating the cited act; that, being required to obtain a license to practice chiropractic when in fact such a license cannot be obtained, their privileges and immunities as citizens have been abridged, and they have been denied the equal protection of the laws and deprived of their property, that is, their right to make a living by their profession, without due process of law, in violation of the Fourteenth Amendment to the Constitution.

Finally, the bill prays for a decree enjoining the defendants as members of the Bureau of Medical Education and Licensure of the Commonwealth of Pennsylvania from enforcing against them the penal clause of the cited act or interfering with them in "the exercise of their professional property rights, unless and until there are laws made specifically regulating and governing the said profession of chiropractic."

On the defendants' motion—in the nature of a demurrer—the court dismissed the bill and the plaintiffs appealed.

█ The bill presents something of a paradox in jurisprudence in that, while expressly disclaiming an attack upon the constitutionality of the act, it seeks relief in a federal tribunal from the construction which the state courts have placed upon the act, because, it is said, the construction violates provisions of the Federal Constitution. And still further, the bill calls upon a federal court to exercise equity jurisdiction to restrain a state board from enforcing the penal provisions of an admittedly constitutional state statute. While a district court of the United States may, when specially constituted, 28 USCA § 380, restrain an officer or agency of a state from enforcing a state statute upon the ground of its unconstitutionality, we know of no case in which a federal district court has jurisdiction to restrain a state agency from enforcing a constitutional state statute in the way the highest courts of the state have construed it. Nor has a federal district court power to review and reverse decisions of state courts interpreting a state statute and set them at nought by injunctive decree. Moreover, speaking generally and recognizing certain co-related exceptions, Jacob Hoffman Brewing Co. v. McElligott (C. C. A.) 259 F. 525, 527, a federal district court not specially constituted is without power in equity to enjoin the enforcement of a state criminal statute, particularly a constitutional criminal statute, 10 R. C. L. page 341, § 91; Terrace v. Thompson, 263 U. S. 197, 214, 44 S. Ct. 15, 68 L. Ed. 255, and is also without power to enjoin the action of state officials under an alleged judicial misconstruction of a valid state statute, P. E. Harris & Co. v. O'Malley (C. C. A.) 2 F.(2d) 810; Arbuckle v. Blackburn (C. C. A.) 113 F. 616, 65 L. R. A. 864.

██ However, we shall, because of the able and earnest presentation of the case for the appellants, discuss and decide the question raised. In order to do so we must first inquire the character of the statute involved. It relates to the art of relieving and curing human ills, which is commonly referred to as the "healing art", of which the plaintiffs admit themselves to be members. This is a generic expression and ordinarily embraces the whole art of healing and its many theories and practices. As it extends to all personal citizens of a state, it falls very clearly under its police powers. These a state may exercise by promulgating a system of regulation and control which, if not unreasonable and arbitrary, is lawful and is binding upon every one in the state.

██ To assure its citizens skilled treatment of their ills by qualified practitioners and particularly to guard them against malpractice by ignorant and unskilled practitioners, the Commonwealth of Pennsylvania, acting within its police power, Dent v. West Virginia, 129 U. S. 114, 9 S. Ct. 231, 32 L. Ed. 623; Collins v. Texas, 223 U. S. 288, 32 S. Ct. 286, 56 L. Ed. 439, declared by the act in question a state policy in respect to the healing art and provided a general system for its complete regulation, referring to it as "the practice of medicine and surgery." That a state may thus regulate "the practice of medicine, using this word, in its most general sense," can no longer be questioned. Powell v. Pennsylvania, 127 U. S. 678, 683, 8 S. Ct. 992, 1257, 32 L. Ed. 253; McNaughton v. Johnson, 242 U. S. 344, 348, 349, 37 S. Ct. 178, 180, 61 L. Ed. 352, Ann. Cas. 1917B, 801. So, also, in defining the class to which its legislation is directed, though purposely comprehensive, it cannot be successfully asserted that the state was arbitrary or unreasonable in requiring that all, who, dealing in one way or another with the anatomy and system of the human body and diagnosing its ills, offer their services to the public, shall have the educational qualifications which the state by the act, requires of them. Collins v. Texas, 223 U. S. 288, 296, 32 S. Ct. 286, 56 L. Ed. 439. For failing or refusing to establish separate boards for all schools of medicine and failing to provide licenses for the practice of their different theories of healing, the plaintiffs in this case do not complain of the state or assail its legislation. They say, however,—and here take their stand—that the practice of chiropractic, though a healing art in which the state has a concern, has nothing in common with drugs, medicine or surgery and therefore is not the practice of medicine and surgery, as the healing art is defined by the act. Or, stated differently, the term "practice of medicine and surgery" does not, they say, include the practice of chiropractic. Therefore, on their claim that there is no

law in respect to their branch of the healing art, chiropractors insist they may lawfully practice their profession without qualifying before or receiving licenses from the State Board created by the act, and may do so without being subjected to criminal prosecutions against which they are protected by the Federal Constitution.

If the case stopped here there might, conceivably, be a field for debate, assuming that the differentiating fact, which the plaintiffs state and on which they rely, could, if open to question, be proved. But it is not open to question for both appellate courts of the Commonwealth of Pennsylvania, the Superior Court and the Supreme Court, the highest courts of the state (Erie R. R. Co. v. Hilt, 247 U. S. 97, 100, 101, 38 S. Ct. 435, 62 L. Ed. 1003), have decided the question by construing the Act and declaring that the words "practice of medicine and surgery" "are taken in their most comprehensive sense whether with the aid of drugs or by any other remedial agencies whatever," and squarely holding that the practice of chiropractic, though "not named therein," is "comprehended in the expression practice of medicine and surgery." This expression they further held "covers and embraces everything that by common understanding is included in the term healing art"; an art which the plaintiffs admit includes the practice of chiropractic. Commonwealth v. Byrd, 64 Pa. Super. Ct. 108; Commonwealth v. Martindell, 82 Pa. Super. Ct. 417; Commonwealth v. Jobe, 91 Pa. Super. Ct. 110; Commonwealth v. Seibert, 262 Pa. 345, 350, 105 A. 507; Long v. Metzger, 301 Pa. 449, 452, 453, 152 A. 572.

When (as in this case) the highest courts construe a statute of their own state, enacted under the police power, it means what they say. Their construction becomes a part of the statute, and thereafter the statute speaks as they have construed it. The scope and effect of such a law (distinguished from its constitutionality) are (as here) state questions as to which the decisions of the state courts of last resort are controlling, Douglas v. Noble, 261 U. S. 165, 43 S. Ct. 303, 67 L. Ed. 590; St. Louis Land Co. v. Kansas City, 241 U. S. 419, 427, 36 S. Ct. 647, 60 L. Ed. 1072. They are binding on all federal courts in which (as here) such construction is involved, whether they agree with it or not. McVicar v. State Board (D. C.) 6 F.(2d) 33; Farncomb v. City and County of Denver, 252 U. S. 7, 10, 40 S. Ct. 271, 64 L. Ed. 424; McGregor v. Hogan. 263 U. S. 234, 236, 44 S. Ct. 50, 68 L. Ed. 282.

A particularly apposite authority in this regard is that of Collins v. Texas, 223 U. S. 288, 32 S. Ct. 286, 288, 56 L. Ed. 439. There the Court of Criminal Appeals of the State of Texas, construing a state statute in respect to the "practice of medicine," held that that expression includes the practice of osteopathy, 57 Tex. Cr. R. 2, 121 S. W. 501, a school which, like that of chiropractic, is opposed to the use of medicine. On writ of error the Supreme Court said: " * * * Of course we follow the Texas court in its decision that the plaintiff in error [an osteopath] is included," and, continuing, held that the state statute, establishing a Board of Medical Examiners and conditions under which persons will be licensed to practice the healing art, though referred to generally as the practice of medicine, does not deprive one, who refuses to apply for a license under the conditions prescribed, of his property without due process of law, or deny him the equal protection of the law.

The decree of the District Court is affirmed.