## FIELD v. FIDELITY UNION TRUST CO. et al.

### No. 7055.

Circuit Court of Appeals, Third Circuit.

Dec. 20, 1939.

JONES, Circuit Judge, dissenting.

———◆———

Russell C. MacFall, of Ridgewood, N. J., for appellant.

Francis F. Welsh and Hood, Lafferty & Campbell, all of Newark, N. J. (Wallace R. Chandler, Jr., of Newark, N. J., of counsel), for defendants-appellees, Fidelity Union Trust Co and Minton H. Twinch, executors of Edith M. Peck, deceased.

Before BIDDLE, JONES, and BUFFINGTON, Circuit Judges.

BIDDLE, Circuit Judge.

This appeal involves the construction of the New Jersey Act validating tentative trusts with respect to saving bank deposits; and the extent to which our court must or should follow two decisions of the Court of Chancery of New Jersey, not a court of final resort, holding the Act void.

Edith · M. Peck on January 2, 1935, transferred a savings account with United States Savings Bank of Newark to "Edith M. Peck, in trust for Ethel Adelaide Field". Peck died on January 6, 1935. This transfer was made after she had told the assistant trust officer of Fidelity Union Trust Company, one of her executors, that she wanted Field to get the deposit when she died. The Savings Bank refused to pay Field the deposit, and she accordingly filed her bill of complaint against it and the executors. The Savings Bank paid the money into court. The District Court for

the District of New Jersey awarded the fund to the executors.

There has been a conflict in the cases as to whether so-called "tentative trusts", in the form of "A in trust for B", create rights in the beneficiary. Obviously such deposits do not fulfill the strict requirements of true trusts. However, they have been accepted as trusts by the weight of authority.[1] But the New Jersey Courts have rejected them, chiefly on the ground that no true trust is created where the donor or settlor still exercises control over the gift. Stevenson v. Earl, 65 N.J.Eq. 721, 55 A. 1091, 103 Am.St.Rep. 790, 1 Ann.Cas. 49; Nicklas v. Parker, 69 N.J. Eq. 743, 61 A. 267 (Court of Chancery) affirmed by the Court of Errors and Appeals, 71 N.J.Eq. 777, 61 A. 267, 71 A. 1135, 14 Ann.Cas. 921.

In 1903 the New Jersey legislature passed an act modifying the law.[2] Although the controlling facts in the Nicklas case occurred after the 1903 statute had been adopted, the court made no reference to the act. This statute is substantially identical with the Act of 1932, which we are called upon to consider, except that the earlier Act provided that the money in the deposit "may be paid" to the intended beneficiary; whereas the statute before us requires such payment. Apparently because of this phrase, the New Jersey courts, still reluctant to admit a change in the basic law, held that the 1903 Act merely protected payment by the bank to the intended beneficiary, but gave him no rights.[3]

In 1932 the New Jersey Legislature, evidently with the intention of changing the law so as completely to validate tentative trusts, adopted the following statute: "1. Whenever any deposit shall be made with any savings bank, trust company or bank by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to the savings bank, trust company or bank, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, shall be paid to the person in trust for whom the said deposit was made, or to his or her legal representatives and the legal representatives of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee; provided, that the person for whom the deposit was made, if a minor, shall not draw the same during his or her minority without the written consent of the legal representatives of said trustee."[4]

This statute was considered twice in 1936 by the Court of Chancery of New Jersey, a court of original jurisdiction, in Thatcher v. Trenton Trust Company, 119 N.J.Eq. 408, 182 A. 912, and Travers v. Reid, 119 N.J.Eq. 416, 182 A. 908. The facts in these two cases cannot be distinguished from those here in question. The Thatcher case involved two bank accounts, the first of which was opened prior to the passage of the act, and the second there-

---

[1] Perry, Trusts, 6th Ed.1911, § 96, Note a; 1 Bogert, Trusts and Trustees, § 47; Scott on Trusts (1939) § 58.3; Restatement of the Law, Trusts, § 58, Tentative Trust of Savings Deposit: "Where a person makes a deposit in a savings account in a bank in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust."

[2] Sec. 32, 4 Comp.St.1910, p. 5666.

[3] Jefferson Trust Co. v. Hoboken Trust Co., 107 N.J.Eq. 310, 152 A. 374 (Court of Chancery). This is in accord with the general interpretation of similar statutes. Restatement, Trusts, § 58, com. d.

[4] It is interesting to note that this section was adopted identically in four different amendments, all of which were approved on March 28, 1932, Ch. 40 to 43 incl. Laws of 1932, N.J.S.A. 17:9–4. These were evidently passed to make certain so far as possible that the titles of the amendments did not offend the provision of the constitution requiring that every law should embrace but one object (Art. IV, Sec. VII, Pár. 4). Ch. 40 is entitled: "An Act concerning trust deposits in savings banks, trust companies and banks where other than the deposit in trust no other or further notice is given in writing of the existence and terms of the trust." The other acts amend the act concerning saving banks, the act concerning banks and banking, and the supplement to the act concerning trust companies, respectively.

after. Both cases held that the statute did not change the pre-existing law. It is not clear to what extent the cases consider the statute unconstitutional. Before examining more closely the reasoning and result of the cases, we should determine to what extent their decisions bind us.

In Erie R. Co. v. Tompkins [5] it was held that there was no such thing as federal "general" or common law, and that federal courts must apply not only the statutory state law, but the common law of the state as well. The doctrine of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, had recognized not only the application of state laws, but, necessarily, the application of the state cases construing them. "Rights and titles to things having a permanent locality, such as the rights and titles to real estate" [6] fell, too, into the rule. Four years later the Supreme Court in Beals v. Hale,[7] in construing two apparently conflicting Michigan statutes, arrived at a conclusion similar to that adopted by an inferior state court; and, in emphasizing the principle laid down in prior cases, that the federal courts are bound by the constructions of state statutes by state courts, made it clear that such acceptance was to be accorded only to the highest judicial tribunals. "Had that decision been made by the highest judicial tribunal of the State, or been shown to accord with a settled usage and practice under these statutes affecting the titles to real estate, we should have felt bound to conform to it, as a part of the local law." The court cited supporting cases all decided before Swift v. Tyson, supra. However these decisions do not seem to have crystallized the law to a point where it could be said that only the pronouncements of the highest tribunal of a state are binding.[8] But definitely this is what the court meant in the Beals case, for the opinion continues: "But, though entitled to respect and weight, that case [Weed et al. v. Lyon et al., Har. (Mich.) 363 (1845), decided by the Chancellor] has not been treated as a precedent to control this, because the judgment was not in a court of the last resort, and is said to have been appealed from, but further proceedings defeated by some accident."

In Erie R. Co. v. Hilt, 247 U.S. 97, 100, 38 S.Ct. 435, 436, 62 L.Ed. 1003, a New Jersey statute forbade recovery to a person injured while walking or playing on any railroad. The trial court, affirmed by the Circuit Court of Appeals for this Circuit, allowed the case to go to the jury, construing the act not to cover the plaintiff who was a child seven years old. The Supreme Court, in an opinion by Mr. Justice Holmes, reversed on the ground that: "The words of the statute seem to us to

---

[5] 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

[6] 16 Pet. 1, 18, 10 L.Ed. 865.

[7] 4 How. 37, 54, 11 L.Ed. 865.

[8] Polk's Lessee v. Wendal, 9 Cranch 87, 98, 3 L.Ed. 665: "In cases depending on the statutes of a state, and more especially in those respecting titles to land, this Court adopts the construction of the state *where that construction* is settled, and can be ascertained." It would appear that such construction cannot be "settled" until a decision by the highest state court.

Gardner v. Collins, 2 Pet. 58, 85, 7 L. Ed. 347: "If this question had been settled by *any* judicial decision in the state, where the land lies, we should, upon the uniform principles adopted by this court, recognize that decision as a part of the local law."

Thatcher et. al. v. Powell et al., 6 Wheat. 119, 127, 5 L.Ed. 221: "In construing the acts of the legislature of a state, *the decisions of the state tribunals* have always governed this court." The court then cites a Tennessee Supreme Court case, Francis' Lessee. v. Wash-

bum & Russell, 5 Hayw. 294, as settling the law in Tennessee, but adds: "On the authority of that case, *and on principle*, the court is of opinion, that there is no error in the judgment of the Circuit Court," thus indicating that had principle been otherwise, opportunity to differ might have been afforded.

Elmendorf v. Taylor, 10 Wheat. 152, 160, 6 L.Ed. 289: " * * * The construction given by the courts of the several states to the legislative acts of those states, is received as true, unless they come in conflict with the constitution, laws, or treaties of the United States."

Shelby v. Guy, 11 Wheat. 361, 367, 6 L.Ed. 495: "That the statute law of the states must furnish the rule of decision to this court, as far as they comport with the constitution of the United States in all cases arising within the respective states, is a position that no one doubts. Nor is it questionable that a fixed and received construction of their respective statute laws in their own courts makes, in fact, a part of the statute law of the country, however we may doubt the propriety of that construction." (Emphasis supplied.)

require a different construction from that adopted and they have been given their full literal meaning by the Supreme Court of the State in the case of an infant younger than the plaintiff. Barcolini v. Atlantic City & Shore R. Co., 82 N.J.L. 107, 81 A. 494." The court added: "In view of the importance of that tribunal in New Jersey, although not the highest Court in the State, we see no reason why it should not be followed by the Courts of the United States, even if we thought its decision more doubtful than we do." Mr. Justice Day and Mr. Justice Clarke dissented, "in the absence of a decision of the highest Court of New Jersey holding otherwise."[9] It should be noted that the court did not express the view that the matter was stare decisis, but followed the decision of the Supreme Court of New Jersey, sitting as an intermediate appellate court, "in view of the importance of that tribunal". Members of the Supreme Court of New Jersey are also members of the Court of Errors and Appeals, the court of last resort of the state, and not, as in our case, trial judges unconnected with any appellate tribunal. And the Hilt case does not say that the federal courts must follow the decisions of a trial court of New Jersey in construing a New Jersey statute.

A similar conclusion based on the Hilt decision was reached by our court in Berlet v. Lehigh Valley Silk Mills, 3 Cir., 287 F. 769, 772, where we followed a decision of the Superior Court of Pennsylvania in holding unconstitutional as class legislation the Act of Pennsylvania of May 23, 1907, P.L. 228, as amended, 6 P.S. §§ 21, 22, giving throwsters of silk a lien. But the Superior Court is an important appellate tribunal, whose decision is final (subject to certiorari) in a very broad field of jurisdiction; and the case did not go to the length of saying that its decision was stare decisis, and must be followed. Recently referring to the Superior Court, in Taplinger v. Northwestern Nat. Bank, 3 Cir., 101 F.2d 274, 278, we used, perhaps, somewhat broad language when we said: "However, since it was squarely raised by the facts of the Kauffman & Baer Case, [Kauffman & Baer v. Monroe Motor Line, 124 Pa.Super. 27, 187 A. 296], the decision in that case amounts to a construction of

the statute by a Pennsylvania appellate court of high authority which we must accept as binding upon us, even though if the matter were open for our consideration a different conclusion might well be reached."

In North Philadelphia Trust Co. v. Smith, 3 Cir., 13 F.2d 585, 586, our court followed the decision of the Supreme Court of New Jersey in construing the Negotiable Instruments Law, N.J.S.A. 7:2–1 et seq., which was in conflict with the Pennsylvania decisions construing that uniform instrument. We said: "This was a decision by the Supreme Court of New Jersey, not by the Court of Errors and Appeals. That court, however, though not the highest court of the state, is, in the estimation of the Supreme Court of the United States, as shown in Erie R. Co. v. Hilt * * * of such standing as to compel the courts of the United States to follow its pronouncements." In Masino v. West Jersey & S. S. R. Co., 3 Cir., 41 F.2d 645, 646, in considering a railroad crossing statute of New Jersey, we spoke of cases which had construed the act decided by the Supreme Court of New Jersey, as compelling observance to their decisions. And in Ex parte Zwillman, 3 Cir., 48 F.2d 76, 78, quoting at length from the Hilt opinion, we followed the construction of a New Jersey statute relating to the imposition of sentences made by the New Jersey Supreme Court. Our language went a little further in Radin v. Commissioner of Internal Revenue, 3 Cir., 33 F.2d 39, 40, in determining that an interest in a contract for the purchase of land was real estate by virtue of a decree of the New Jersey Court of Chancery thus ruling. We held, in referring to the rule of law suggested in the Hilt case: "The matter has been decided by a high state court of competent jurisdiction whose decision, involving a rule of property, federal tribunals must follow." But the decision of the state court followed in this case was in the nature of res adjudicata rather than stare decisis. The scope of the case goes no further than to insist that the decision of any state court construing an instrument is finally determinative on the federal court where the question to be decided depends on such construction. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465.

---

[9] In Oakes v. Mase, 165 U.S. 363, 364, 17 S.Ct. 345, 41 L.Ed. 746, the Supreme Court said: "As this ruling *of the court of last resort* of the state of Montana interpreting the constitution and laws of that state is binding here * * * [italics supplied]."

These cases come pretty close to saying that a federal court must follow the construction of a state statute made by a court not of final resort. But that we have followed such construction does not necessarily involve that in all instances we must do so. The distinction between the authority of appellate courts and of trial courts was made in In re F. & D. Co., 256 F. 73, 76, by the Circuit Court of Appeals for the Second Circuit, who were faced with the construction of a lien law of the state of New York by a New York trial court. The decision had been made by special term of the Supreme Court of Saratoga County in Clement v. Congress Hall, 72 Misc. 519, 132 N.Y.S. 16, and the federal court accepted it, emphasizing particularly, however, that the Hilt case did not lay down "a rule which makes it incumbent upon this court to adopt a construction given to a state statute by a trial judge in a state court." The court pointed out the distinction between the Supreme Court of New Jersey, a court composed of nine judges, and the special term of the Supreme Court of New York, consisting of a single trial judge.

Two cases in the Circuit Court of Appeals for the Seventh Circuit seem to be in conflict. In deciding that under the Indiana law a conditional sale of personal property for the purposes of resale with an agreement reserving title in the seller was void, the court felt impelled to follow the decision of the Appellate Court of the state, In re Gilligan, 7 Cir., 152 F. 605. The statute creating the Appellate Court made its jurisdiction final except in the event that the case was transferred to the Supreme Court or the Supreme Court ordered certification. Yet in Damen & Jarvis Bldg. Corp. v. Mechanics' Ins. Co., 7 Cir., 83 F.2d 793, the same federal court refused to adopt an interpretation of a fire insurance policy by the same state court where the question had not been adjudicated by the State Supreme Court, and a recent decision of the Supreme Court had indicated doubt.

The Eighth, Sixth and Second Circuits are clear that their courts are not bound by interpretation of a statute by any court other than the highest court of the state. In the Eighth Circuit this conclusion was reached in Anglo-American Land Company v. Lombard, 8 Cir., 132 F. 721, 741, 742, where the court said: "A fixed and settled rule of decision in a state court of last resort establishes the law of the state in such manner as to bind the federal courts in all matters controlled by the state law; but the opinions of intermediate appellate courts, like the Kansas City Court of Appeals, while entitled to great respect and regarded as persuasive authority, are not controlling upon the federal courts, because they do not settle the law of the state." In construing a Missouri statute requiring dangerous machinery in factories to be guarded, the same court, in Federal Lead Co. v. Swyers, 8 Cir., 161 F. 687, 691, refused to follow three cases in the Kansas City Court of Appeals, and said: "While those decisions, by reason of the learning and ability of the distinguished judges who pronounced them, are entitled to our respectful consideration, they are not the decisions of the highest judicial tribunal of the state * * * construing local statutes, which alone are binding upon federal courts." The same court reaffirmed this rule in Westerlund v. Black Bear Mining Co., 8 Cir., 203 F. 599, 609, in construing a statute dealing with the powers of directors of mining companies. The decision of the Colorado Court of Appeals, not the highest judicial tribunal of the state, was termed "not an authoritative declaration of the law of the state of Colorado * * *." Similarly, Freund v. Yaegerman, Circuit Court E. D. of Mo., 27 F. 248.

In United States Telephone Co. v. Central Union Tel. Co., 202 F. 66, 69, the Circuit Court of Appeals for the Sixth Circuit said: "It is clear that the obligation to follow the lead of the state courts does not arise, unless the court to be followed is the court of last resort in the state * * * and particularly so when the lower court opinions are not unanimous or numerous and old enough to show a settled rule."

Most recently the second circuit, in Irving National Bank v. Law, 2 Cir., 9 F.2d 536, 537, speaking through Judge Learned Hand, in deciding whether the judgment of the Appellate Division of the Supreme Court of New York on the meaning of a New York statute was conclusive on the federal court, after referring to the cases which we have cited, said: "We understand the doctrine to mean that the highest court of the state, by declaring what a statute means, settles it, because there is no authority which can gainsay it. Yet, however conclusive between parties to a suit, the decision of a lower court is of course not authoritative upon the highest court; the statute necessarily remains in nubibus,

and its construction may be as it will." The court refused to follow the conclusion of the Appellate Division. Judge Hand thought that the Gilligan case "stands alone". In Continental Securities Co. v. Interborough R. T. Co., 165 F. 945, 959 the Circuit Court for the Southern District of New York, was of the opinion that the federal courts are not bound by decisions of the Appellate Division. "The lower federal courts are bound by the decisions of the highest court of a state giving construction to the Constitution or statutes of the state * * * but are not bound by its decision on questions of general commercial law, etc."

We believe that the proper rule is that federal courts should in all instances follow the law of the state with respect to the construction of state statutes. Where that law has been determined by the courts of last resort their decisions are stare decisis, and must be followed irrespective of our opinion as to what the law ought to be. As to the pronouncements of other state courts, however, we are not so bound, but may conclude that the decision does not truly express the state law.

The Thatcher and Travers cases may now be discussed. In the Thatcher case the Vice-Chancellor held that the Act of 1932 was "ineffective to change the prior rules of law." He spoke of the Act as obviously unconstitutional, though not so stated in the syllabus by the Court. He conceded the attempt of the legislature to accomplish a change in the law, but held the attempt abortive because the language used by the legislature was "confused, impractical, and wholly unsatisfactory and difficult to comprehend." He thought that the words "the same or any part thereof" referring to the deposit, although intended to mean "the bank deposit or such part of it as remains," did not say so, and that he could not supply the defects of the legislature. Such a construction violates the plain if not artistic language of the statute, and the fundamental rule of statutory construction that a statute must be construed to give effect to its intent. The Vice-Chancellor found the intent plain, but refused to give it effect.[10] He thought that the provision in the statute that no other notice of the existence of the trust had been given to the bank was a condition precedent to the operation of the statute. In the Thatcher case no such notice had been given; in our case it had. The Vice-Chancellor considered, however, that the requirement of notice created an unreasonable and therefore unconstitutional classification, suggesting that where notice *was* given (as here) the beneficiary would take nothing. But the notice concerns a valid and completed trust and not the type of deposit that the statute validates. The reasonable construction is that it eliminates the necessity of notice of a true trust to the bank as a required step to make the trust existent. Of course if such notice is given to the bank the terms of the notice cover the disposition of the money; but where we have no declaration of trust, merely the opening of a deposit in trust for a named beneficiary, the statute becomes applicable.

In the Travers case the court held that the statute could not operate as an amendment to the Wills Act, N.J.S.A. 3:2–1 et seq., because of its title. But the Court of Errors and Appeals of the State of New Jersey has indicated that such a deposit is an inter vivos trust and not a testamentary disposition, Cutts v. Najdrowski, 123 N.J. Eq. 481, 198 A. 885. The deposit read: "Leon Najdrowski int. for Joseph Najdrowski", and was made in the Williams Bank in New York by a New Jersey depositor whose administratrix claimed it. The Chancellor had held that the law of New Jersey where the depositor had been domiciled, controlled.[11] Although reference was made to both the Thatcher and Travers cases, the statute was not mentioned, nor its construction by these two cases. The Court of Errors and Appeals reversed on the ground that the law of New York governed the transaction, thus necessarily deciding the transaction was in the nature of a trust inter vivos and not testamentary, for had it been testamentary it would have been governed by the law of New Jersey. Further the Vice-Chancellor held in the Travers case that the act must be ineffective because it applied whenever any deposit shall be made in trust, and no true trust was created, so that the act did

---

10 Compare: "We have the old law, the mischief, and the remedy, and it is our duty to 'so construe the act as to suppress the mischief and advance the remedy.' Bl.Com.Bk. 1, p. 87." Soden v.

Trenton & Mercer Traction Corp., 101 N.J.L. 393, 396, 127 A. 558, 559; In re Merrill, 88 N.J.Eq. 261, 293, 102 A. 400, 405.

11 121 N.J.Eq. 546, 191 A. 867.

not become effective. The Thatcher case had come to an opposite conclusion, construing the words "in trust" as descriptive of the deposit rather than characterizing its legal effect. Serious constitutional defects were hinted, but not specified. The court refused to enforce the Act without clearly saying that it was unconstitutional.[12]

We hold, therefore, that the law of New Jersey is the law expressed in the statute which seems to us clearly constitutional and unambiguous, and that we are not bound to follow contrary decisions of the Chancery Court of New Jersey.

Judgment reversed, with directions to enter a decree in conformity with this opinion.

BUFFINGTON, Circuit Judge (concurring).

I concur in the conclusion reached by the court. The statute of New Jersey is clear and unambiguous; it calls for no construction. But the question is as to the enforcement of a law passed by a sovereign state in a matter of which it has jurisdiction. The wording of the statute is applicable to the facts of the present case. In the absence of any decision by the court of highest resort of New Jersey holding the act unconstitutional and inapplicable, I am of opinion that this court is free to apply the statute to the facts of this case. I therefore concur in the conclusion reached.

JONES, Circuit Judge (dissenting).

The fundamental question presented by this appeal is of such general importance that I am constrained to state the reasons for my disagreement with the majority.

When Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, was overruled by Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, and Section 34 of the Judiciary Act of 1789[1] was held to refer to the common law of a State as well as to its statute law, the Supreme Court made plain that it is the law of a State, as declared by the authority of the State (legislative and judicial) which is binding on a federal court upon a question of local law. Nonetheless, the decision of the majority in the present case denies appropriate effect, as it seems to me, to the law of New Jersey as so declared.

From their own independent construction of a statute of New Jersey (Laws of 1932, cc. 40 and 41), the majority conclude that Mrs. Field became entitled, upon the death of Miss Peck, to the bank deposit in dispute, notwithstanding that, on two separate occasions and upon facts which, as the majority opinion states, "cannot be distinguished from those here in question", the New Jersey Court of Chancery has held that the statute was ineffectual to accomplish the result which the majority now reaches in the present case. See Thatcher v. Trenton Trust Co., 119 N.J.Eq. 408, 182 A. 912, and Travers v. Reid, 119 N.J.Eq. 416, 182 A. 908.

No appeal was taken from the final decree in either the Thatcher or Travers case, supra, and, although each was decided early in 1936 and the New Jersey legislature has been in regular session four times since then, the effect of those decisions has not been changed by subsequent legislative action or further judicial decision. Aside from the Thatcher and Travers cases, supra, there are no other reported court decisions of New Jersey construing the Act in question. Presumably the statute of 1932, *as construed by the New Jersey Chancery Court,* expresses the law of the State, with reference to the particular subject matter, as the people of New Jersey desire it to be. Such is their right without federal let or hindrance. Undeniably, the Constitution, laws, or treaties of the United States are not involved in the present case in the slightest way. See Erie Railroad Co. v. Tompkins, supra, where Mr. Justice Brandeis, speaking for the majority, quoted with approval from the dissenting opinion of Mr. Justice Field in Baltimore & Ohio R. Co. v. Baugh, 149 U.S. 368, 401, 13 S.Ct. 914, 37 L.Ed. 772, in part, as follows, 304 U.S. at page 79, 58 S.Ct. at page 822, 82 L.Ed. 1188, 114 A.L.R. 1487,—"Supervision over either the legislative or the judicial action of the states is in no case permissible except as to matters by the constitution specifically authorized or delegated to the United States. Any interference with either, except as thus permitted, is an invasion of the authority

---

[12] "But the decision in this cause does not necessarily turn upon the constitutionality of the act." [119 N.J.Eq. 416, 182 A. 910.]

[1] Judiciary Act of September 24, 1789, c. 20, 28 U.S.C.A. § 725.

of the state, and, to that extent, a denial of its independence."

Yet, the majority conceive that we are free to disregard the decisions of the Chancery Court and to construe the statute as we will. On the contrary, the proper course for this court, when called upon to ascertain and declare the statute law of a State, would be to accept the statutes of the State, as uniformly construed by its important courts of competent jurisdiction (although not the highest), in the absence of any decision by the State court of last resort. Section 34 of the Judiciary Act of 1789, even as too narrowly restricted by Swift v. Tyson,[2] supra, appears to have required as much. There was then no suggestion that, in the matter of State decisions on *statute* law binding on federal courts, the "local tribunals" (there specified) meant only a State court of last resort.

In any event, our duty to apply the statute law of New Jersey as construed by the Court of Chancery of that State is hardly open to question any longer.

In the case of Erie R. Co v. Hilt, 1918, 247 U.S. 97, 100, 101, 38 S.Ct. 435, 436, 62 L.Ed. 1003, this court, having declined to follow the construction of a New Jersey statute as theretofore determined by a decision of the Supreme Court of that State (not the court of last resort), made and applied its own independent construction. In reversing the judgment of this court the Supreme Court, in an opinion by Mr. Justice Holmes, said: "The words of the statute seem to us to require a different construction from that adopted and they have been given their full literal meaning by the Supreme Court of the State in the case of an infant younger than the plaintiff. Barcolini v. Atlantic City & Shore R. Co., 82 N.J.L. 107, 81 A. 494. *In view of the importance of that tribunal in New Jersey, although not the highest Court in the State, we see no reason why it should not be followed by the Courts of the United States, even if we thought its decision more doubtful than we do.*" (Emphasis supplied.)

The question as to whether, in applying the statute law of a State, we are bound to follow only the decisions of the highest court of the State was directly before the Supreme Court in the Hilt case, supra, and was there answered in the negative. This is plainly evidenced by the fact that two of the members of the Court dissented from the judgment in the Hilt case on the ground that this court was right, "In the absence of a decision of the highest Court of New Jersey holding otherwise", when we independently construed the statute contrary to the decision of the New Jersey Supreme Court. But, by direct contrast, the majority of the court ruled otherwise.

Since then, this court has had a number of occasions to comply with the Supreme Court's instructions in the Hilt case, supra, which we have done uniformly up to the present time with the exception of one instance.

Thus, in expressed obedience to the Hilt case, supra, Murray v. Payne, 3 Cir., 1921, 273 F. 820, applied the New Jersey Supreme Court's construction of a State statute; likewise, North Philadelphia Trust Co. v. Smith, 3 Cir., 1926, 13 F.2d 585, followed the construction of the New Jersey Negotiable Instruments Act made by the Supreme Court of that State; Masino v. West Jersey & S. S. R. Co., 3 Cir., 1930, 41 F.2d 645, 646, cited the Hilt case and said that the Supreme Court of New Jersey was "of sufficient importance to compel observance of its decisions"; and Ex parte Zwillman, 3 Cir., 1931, 48 F.2d 76, quoting at length from the Hilt case, followed the New Jersey Supreme Court's construction of a New Jersey statute. Also Berlet v. Lehigh Valley Silk Mills, 3 Cir., 1923, 287 F. 769, and Steinbach et al. v. Metzger et al., 3 Cir., 1933, 63 F.2d 74, each cited the Hilt case in support of their respective observance of a statutory construction in the one case and a decision based on the common law in the other by the Superior Court of Pennsylvania (a high and important court, it is true, but still not the court of last resort). And, in Radin v. Commissioner of Internal Revenue, 3 Cir., 1929, 33 F.2d 39, 40, this court, in what it deemed to be compliance with the Supreme Court's requirement in the Hilt case, applied as the law of New Jersey a decision *of the Chancery Court of that State.* True enough, as the majority opinion in the present case points out, the decision in the case last above cited involved a rule of property, and its acceptance could have been as *res adjudicata* rather than as *stare decisis.* But,

---

2 It was said in Swift v. Tyson, 16 Pet. 1, 18, 10 L.Ed. 865, that "the true interpretation of the 34th section limited its application to state laws, strictly local, that is to say, to the positive statutes of the state, and the construction thereof adopted by the local tribunals", etc.

it is not without point that in the Radin case, supra, Judge Woolley, speaking for this court, described the Court of Chancery of New Jersey (with whose decisions we are now concerned) as "a high state court of competent jurisdiction".

Any thought that the ruling in the Hilt case, supra, was because of the Supreme Court's agreement with the New Jersey court's construction of the particular statute rather than because of the duty resting upon the federal courts, in matters of local law, to follow a State statute, as construed by an important State court of competent jurisdiction, should be dispelled by the later decision of the Supreme Court in the case of Erie Railroad Co. v. Duplak, 286 U.S. 440, 444, 52 S.Ct. 610, 611, 76 L.Ed. 1214 (the one earlier instance where this court failed to follow the ruling of the Hilt case). In the Duplak case, supra, the New Jersey decision which this court declined to follow was the same decision by the Supreme Court of New Jersey (Barcolini v. Atlantic City and S. R. Co., supra), which had been rejected by this court in the Hilt case. In the Duplak case, supra, the Supreme Court makes no mention of its agreement with the construction of the statute as made by the Supreme Court of New Jersey, but, on the other hand, says: "The effect of the Hilt decision is to accept the state statute, as construed by the state court, as having put a negative upon the implied invitation and attractive nuisance doctrines; and the same statute necessarily controls here whatever, otherwise, might be the rule."

As we should have been compelled to observe a decision of the Supreme Court of New Jersey, construing the statute in the present case, as declaratory of the law of the State, it follows, necessarily, that, if we are now at liberty to ignore the construction placed on the statute by the Court of Chancery, it must be because the New Jersey Court of Chancery is not equal in its importance or finality to the Supreme Court of that State. But, such is plainly not the case.

The decrees of the Chancery Court like the judgments of the Supreme Court are state-wide in their effect and in either case are appealable to the Court of Errors and Appeals (the highest State court). There is no intermediate court of appeal empowered to review the work of either. Within their respective jurisdictions, the one in equity and the other at law, the importance and finality of New Jersey's Court of Chancery is on a parity with that of the Supreme Court of the State. The decisions of the one are not to be treated as stare decisis any more than are the decisions of the other.

The majority describe the Court of Chancery as "a court of original jurisdiction" and the Supreme Court as "an intermediate appellate court",[3] from which the implication may arise that there is a difference in standing between these two courts with the Court of Chancery in the inferior position. The description is correct so far as it goes, but it fails to suggest the co-extensive territorial jurisdiction of both courts and the equal finality of their respective decrees and judgments, save for a direct appeal from either to the court of last resort. Significance is also attached by the majority to the fact that the Judges of the Supreme Court help to compose the Court of Errors and Appeals, but so does the Chancellor, the presiding judicial officer of the Chancery Court, through whom all writs and decrees in equity issue and who supervises and effectuates the adjudications and decrees filed by the Vice-Chancellors.

If further confirmation of the equal importance of these two tribunals, within the State of New Jersey, should be required, let it be noted that the highest court of the State, the Court of Errors and Appeals, regards them as equally important. In Levy v. City of Elizabeth, 81 N.J.L. 643, 80 A. 498, 500, the Court of Errors and Appeals, upon an appeal from the Supreme Court of New Jersey, said, "Irrespective of the inherent merit of this construction, a ruling uniformly made by the Supreme Court over a course of years should not be set aside by us except for cogent and important reasons", etc. Later in Ramsey v. Hutchinson, 117 N.J.L. 222, 187 A. 650, 651, again, upon

---

[3] The appellate jurisdiction of the Supreme Court of New Jersey, when invoked, is optional with the litigant rather than compulsory. Thus, the appellant may take an appeal from a court of first instance at law to the Supreme Court of New Jersey, or he may appeal directly to the Court of Errors and Appeals; and, if he chooses to take his appeal to the Supreme Court, either party may thereafter appeal, as of right, to the Court of Errors and Appeals from the judgment of the Supreme Court. N.J. Rev.1877, p. 373, §§ 4 and 5, Rev.Stat. (1937) sections 2:27–351 and 2:27–352, N.J.S.A. 2:27–351, 2:27–352.

appeal from the Supreme Court of New Jersey, the Court of Errors and Appeals quoted the above from Levy v. City of Elizabeth, supra, and added in brackets, after the words Supreme Court, "or the Court of Chancery". Thus, although the appeal then under consideration was one at law from the Supreme Court of the State, the Court of Errors and Appeals took pains to place the Court of Chancery in juxtaposition with the Supreme Court of the State so far as the importance of the decisions of either court is concerned.

The justification for our saying, as the majority in effect do, that the Chancery Court of New Jersey is a less important tribunal than the Supreme Court of that State, is not apparent to me. And, with that distinction gone, the reason for our refusal to follow the decisions of the Chancery Court, pertinent to this case, vanishes completely.

Moreover, the decision of the majority leads directly to the situation where a statute of New Jersey when construed in chancery can never become the law of the State, so as to be binding on a federal court, until it has been passed upon and affirmed by the Court of Errors and Appeals, while the same statute when construed at law (Supreme Court of New Jersey) will bind us, without utterance from the Court of Errors and Appeals, even though the decision is later taken to the latter court for review and there reversed. This resultant anomaly, of itself, argues strongly for our acceptance of the decisions of the Court of Chancery of New Jersey equally with the decisions of the Supreme Court of that State.

While many cases of the past, as the majority opinion discloses, can be cited for the proposition that it is a decision of the court of last resort of a State which binds a federal court on a question of local law, nevertheless, at least since the Hilt case, supra, we are also bound by the construction of a State statute made by an important court of the State although not the highest.

The intent, scope and effect of a State statute are, in a very real sense, what important courts of the State impute to it, just as effectively as if the statute had been so enacted by the legislature. Until reversed on appeal or offset by the legislature, a decision of a State court of competent jurisdiction construing a statute becomes a component part of the law thus effected. We cannot, therefore, fairly take a statute separate from the decisions construing it and arbitrarily give it our own independent construction. To do so would be to ascertain less or other than the State law. In this connection the words of Mr. Justice Holmes in his dissenting opinion in Kuhn v. Fairmont Coal Co., 215 U.S. 349, 372, 30 S. Ct. 140, 148, 54 L.Ed. 228, which later found effect in the majority opinion in Erie R. R. Co. v. Tompkins, supra, are apposite: "It is said that we must exercise our independent judgment—but as to what? Surely, as to the law of the states. Whence does that law issue? Certainly not from us. But it does issue, and has been recognized by this court as issuing, from the state courts as well as from the state legislatures."

Concurrently with the decision of the majority, and growing out of the same New Jersey statute, there will be one rule of law for resident claimants who are committed to the courts of New Jersey, and a different rule for such non-resident claimants as can, by reason of the mere accident of diverse citizenship and amount in controversy, invoke federal jurisdiction for the enforcement of their equally private and local claims. On the other hand, if we would but follow the decisions of the Chancery Court with respect to the particular statute here involved, it could make no difference from the standpoint of a claimant's rights whether his action was brought under federal or state jurisdiction. We should leave to the proper authority (Court of Errors and Appeals or State Legislature) any corrections of the Chancery Court's decisions that may be deemed advisable. This, we should do without speculation on our part as to what either the Court or the Legislature may do in the future.[4] By so

4 The majority infer from the case of Cutts v. Najdrowski, 123 N.J.Eq. 481, 198 A. 885, that the Court of Errors and Appeals viewed the "deposit in trust" in that case as a gift inter vivos rather than as a testamentary disposition. That deposit, while in trust, had been in a New York bank. After the depositor's death it had been withdrawn by the beneficiary and, by him, deposited in a bank in New Jersey. The administratrix of the depositor's estate sought to recover the money from the beneficiary in New Jersey as a part of the depositor's estate. The Court of Errors and Appeals decided no more than that the so-called tentative trust (which was valid under the law of New York) was governed by the law of New York (the situs of the trust).

doing, we shall insure that the federal litigant will fare no differently or better than one in the State courts. Instead, however, the decision of the majority will serve to render the New Jersey statute nonuniform in its application and, at the same time, we shall remain powerless to render this court's ruling dominant throughout the State or to change the law there obtaining. The intendment of the decision in Erie R. R. Co. v. Tompkins, supra, makes our duty, in such circumstances, equally evident where the question of local law rests on the construction of a State statute by "a high state court of competent jurisdiction".

Indeed, the statute in the present case "calls for no construction", not because it is "clear and unambiguous", but because it has already been construed by "a high State court of competent jurisdiction".

As both reason and authority seem to me to require that we follow the decisions of the Court of Chancery with respect to the New Jersey statute of 1932, cc. 40 and 41, I am compelled to dissent from the action of the majority, which I do respectfully.