ALBERT N. SODEN, EXECUTOR OF THE LAST WILL AND
TESTAMENT OF GARRETT N. SODEN, DECEASED,
APPELLANT, v. TRENTON AND MERCER COUNTY
TRACTION CORPORATION, RESPONDENT.

Argued November 3, 1924—Decided January 30, 1925.

The act of March 15th, 1855 (*Comp. Stat., p.* 2260, § 4), giving to
executors or administrators an action for any trespass done to
the person or property of their testator or intestate, is not in
contradiction to the Death act of March 3d, 1848 (*Comp. Stat.,
p.* 1907), and, in a given case, a recovery may be had under each
act; under the former for the loss that accrued to the estate be-
tween injury and death, and, under the latter, for the pecuniary
injury resulting from the death to the widow and next of kin.

On appeal from the Supreme Court, whose opinion is re-
ported in 100 *N. J. L.* 27.

For the appellant, *Martin P. Devlin.*

For the respondent, *Katzenbach & Hunt* and *George
Gildea.*

The opinion of the court was delivered by

LLOYD, J.   Albert N. Soden, as executor of the last will of
Garrett N. Soden, brought suit in the Mercer County Com-
mon Pleas to recover damages for injuries sustained through
the negligence of the Trenton and Mercer County Traction
Corporation to his testator, resulting in the latter's death, and
for damages sustained by the death to the next of kin.   At
the trial counsel for the defendant moved to strike out of the
complaint all damages arising previous to the death of
Soden.   The court permitted an amendment of the complaint
so that the same should be presented in two counts—the first
for moneys expended between the date of the accident and
the death of the testator as damages sustained by the estate,
and the second for the pecuniary loss sustained by the next
of kin from the death itself.   A motion was then made by

defendant's counsel to strike out the first count. The court granted the motion, and to this action an exception was noted by the plaintiff. An appeal to the Supreme Court resulted in an affirmance of the judgment, and the case is here on appeal from this judgment of affirmance.

The facts of the case were that Garrett N. Soden was injured through the negligence of the defendant company on the 30th of May, 1922. These injuries resulted in his death on the 25th of November, 1922. In the interval between the date of the accident and the death sundry expenses were incurred by the deceased in the effort to effect a recovery, and certain loss of earnings was alleged to have resulted from the injuries.

It will be perceived that the question presented is whether an action may be maintained by the executor to recover the damages sustained by the deceased in his lifetime by reason of the injuries tortiously inflicted upon his person and which resulted in his death. The right to recover is rested on the act of March 15th, 1855 (*Comp. Stat., p.* 2260), the fourth section of which enacts:

"That executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser or trespassers, and recover their damages in like manner as their testator or intestate would have had if he or she was living."

It is claimed by the respondent, however, that this act, notwithstanding its clear and explicit statement, was not intended to give a remedy for the injuries set forth in the count which was struck out in the court below, but was passed in subordination to the Death act of March 3d, 1848 (*Comp. Stat., p.* 1907), and was absorbed in its provisions, section 1 of which reads as follows:

"That whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation which, would have been liable if death

had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

The second section of the act provides that such action shall be brought in the name of the personal representatives of the deceased person and the amount recovered in such action shall be for the exclusive benefit of the widow and next of kin of the deceased person, and shall be distributed to the widow and next of kin in the proportions provided in the statute of distributions. And, further, that the damages shall be awarded by the jury with reference to the pecuniary injury resulting from the death of the deceased to the widow and next of kin. Slight changes have been made in the act, but are not material for our consideration now.

At common law for any injury to the person, though never so unlawfully caused, resulting in death, no remedy was accorded to the estate of the deceased person, nor to those dependent on him. That this was the settled law of England prior to legislation on the subject is not open to question. As a preamble to Lord Campbell's act, it is recited that "whereas no action at law is now maintainable against a person who, by his wrongful act, neglect or default, may have caused the death of any person." To like effect was the common law of our own state. *Grosso* v. *Railroad Co., 50 N. J. L.* 317. In the early period of the development of the common law of England no personal right of action survived to the personal representatives. *Cooper* v. *Shore Electric Co., 63 Id.* 558. In 4 *Edw. III, ch.* 7, then more tender of property rights than of human rights, the British parliament sought to remedy in a measure the defect by giving to executors an action for "a trespass done to their testator, or of the goods and chattels of the testator carried away in life." By the act of 25 *Id., ch.* 5, and the judicial interpretation of the two statutes, actions on the case and in *assumpsit* on simple contract were held to be accorded, but injuries to the freehold and to the person were still without redress at the hands of the personal representative. In 1846

parliament passed the act known as the Death act, and now generally given the title of its illustrious author, Lord Campbell. It, undoubtedly, was the product of an enlightened public conscience that realized the inadequacy of the law to do justice in this important phase of wrongs to the person whereby, due to the growing industrial and commercial activities of the nineteenth century, human life was being more and more sacrificed and more and more dependents left penniless and without redress for the loss of those upon whom they leaned for support. This same realization in this country brought about similar changes in the states and with singular promptness and unanimity. In our own state the act of 1848 was passed; New York preceded us in 1847 and other states followed our own. In general, the provisions of Lord Campbell's act as to substantive right were followed (*Tiff. Death Wrong. Act, p.* 26), that of New Jersey being in almost identical language. Divergences appear in the distribution of damages, but here, also, the general scheme of provision for dependents is maintained. This condition of the law still left a large and obvious class of injury without redress. The acts of Edward III had remedied the inadequacy of the law so far as to permit the survival of actions for injuries to the personal property of deceased persons, but afforded no remedy for injuries to the real property or to the persons of those who had died. It was in this situation that our own act of 1855 was passed, and by its very terms would seem to have been enacted to meet the precise deficiencies that the English statutes had failed to supply. Its language is "that executors  *  *  *  may have an action for any trespass done to the *person* or property, *real* or personal, of their testator,  *  *  *  and recover their damages in like manner as their testator would have had if  *  *  *  living."

Viewing the subject historically, therefore, it would seem that but one conclusion could be reached. We have the old law, the mischief and the remedy, and it is our duty to "so construe the act as to suppress the mischief and advance the remedy." 1 *Bl. Com.* 87. That the old law fell short

of meting out justice in the class of injuries of which the present is a type would seem to be beyond question. To hold that the damage to one's property should create liability surviving the death of its owner, and to withhold the remedy where, under like circumstances, the injury is to one's person, is illogical, inconsistent and an offense to our sense of justice. The additional words supplied in the act of 1855 are aptly used to enlarge the old law and to correct this injustice. It is impossible not to recognize a legislative purpose to complete the corrective process which had been in part attained in 1848, for it must not be overlooked that the act of 1855 followed in sequence the act of 1848 and not the reverse.

Passing from the reasoning and spirit of the legislation on the subject, we are no less driven to the same conclusion when the act of 1855 is itself examined. Not only is the section under consideration clear, but a glance at section 5 will reveal a legislative purpose to remove effectively the bar of death in actions for wrongs inflicted in life. As the fourth section affords a full and complete remedy for tortious injuries to the person or property where death ensues, so the fifth section subjects the personal representatives of deceased persons to liability for unlawful injury perpetrated by those in whose place they stand. Under the latter section a right of action has been accorded even under the Death act against the administrator of a deceased tort-feasor. *Hackensack Trust Co., Admr.,* v. *Vanderberg et al.,* 88 *N. J. L.* 518.

The act as a whole has not been without judicial examination in our courts. Says Chief Justice Beasley in *Ten Eyck* v. *Runk,* 31 *N. J. L.* 428. "the act is highly remedial in its character. Its intent was to relieve against the harsh injustice of the old rule *actio personalis moritur cum persona.* There was certainly nothing in morals, in public policy or good sense, to justify the continuance of a rule that grounded a man's right to recover for an injury to his person or estate, inflicted by a tortious act, on the contingency of the party injured surviving to the date of the judgment. The statute is therefore to be liberally construed so as to ad-

vance the remedy for this imperfection." In that case, which was for damage caused by negligently overflowing the plaintiff's land, the word "trespass" in the act was given the widest application. The same liberal construction of the act was accorded in *Tichnor* v. *Hayes*, 41 *Id.* 193, and in *Cooper* v. *Shore Electric Co., supra.*

It is suggested, however, that to sustain the present action would be to subject the wrong-doer to double damages—damages to the deceased's estate and also to those entitled under the Death act for the same wrong. Not so; the two causes of action are separate and distinct. As was stated, respecting the act of 1848 by Mr. Justice Depue in Cooper *v.* Shore Electric Co., quoting the English cases, "the statute [death] gave to the personal representatives a cause of action beyond that which the deceased would have had if he had survived and based on a different principle—a new right of action." The recovery goes, not to the estate of the deceased person, but to certain designated persons or next of kin. In the recovery the executor or administrator as such has no interest; the fund is not liable to the debts of the deceased, nor is it subject to disposition by will. One may well suppose that the primary legislative concern in the act of 1848 is provision for those who may have been the dependents of the deceased, inasmuch as the only damages recoverable are those sustained by the beneficiaries named. In that act it is the death of the injured person that creates the right of action, the language being "its pecuniary injury resulting from such death to the widow and next of kin." It is otherwise with respect to the act of 1855. In both sections 4 and 5 of that act as previously quoted the law contemplates compensation to the deceased person's estate in the one and obligation to pay by the estate of the deceased person in the other. At death all damages cease with respect to the rights under section 4 of this act. It is in the interval between injury and death only that loss can accrue to the estate, and in that alone is the personal representative interested. In this the Death act gives no participation by the widow or next of kin. The expense of care, nursing, medical attend-

ance, hospital and other proper charges incident to an injury, as well as the loss of earnings in the lifetime of the deceased, are the loss to his estate and not to them. The controlling feature in the Death act is "that damages are made recoverable for causing death as compensation for the pecuniary injury the designated beneficiaries have sustained by reason of the death," and "the pecuniary injury begins immediately on the death." *Cooper* v. *Shore Electric Co., supra* (at *p.* 565). It is significant in this connection that the limitation under the act of 1848 runs from the death, while under the act of 1855 the limitation runs from the time of the injury inflicted.

It is also argued that the absence of litigation based on the act of 1855, to recover for injuries to the person, strongly indicates the absence of such right of action conferred therein. While in a doubtful case the apparent novelty of the action would be given great weight, it cannot be given controlling influence where the language is clear and the meaning not doubtful.

Whether, therefore, the act of 1855 be interpreted according to its own phraseology, in the light of the old law, the mischief and the remedy, as one of liberal construction, or in view of the early expression of eminent jurists in this state and the decisions bearing upon section 5, there would seem to be no doubt that it was passed as supplementary to the Death act, and to fill the gap left open in the acts of Edward III by affording complete and adequate redress to the estates of those who were injured in person or in property by injuries causing death, and likewise imposing liability on the estates of deceased persons for such wrongs to others.

The result we reach is that the judgment shall be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, MINTURN, KALISCH, BLACK, KATZENBACH, LLOYD, VAN BUSKIRK, CLARK, MCGLENNON, JJ. 10.