

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-1997

# Alexander v. Whitman

Precedential or Non-Precedential:

Docket 95-5414

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Alexander v. Whitman" (1997). *1997 Decisions.* Paper 111.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/111

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 23, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 95-5414

KAREN ALEXANDER; DENNIS DRAZIN, ESQ.;
DRAZIN AND WARSHAW,

v.

CHRISTINE TODD WHITMAN; PETER VERNIERO;[1]
JANICE S. MATHIS; STEPHEN R. ROTHMAN; ELTON A.
CONDA; W. ROBERT HENTGES; HARRY A. FREITAG, JR.;
MARIA VIZCARRONDO-DE SOTO; DONALD H. WAGNER;
DONALD W. DE LEO; SUSAN HOFFMAN GREENE;
CAROL OSWALD; KEVIN J. HOAGLAND; MARIE S.
MUHLER; *JOHN PECORARO; FRANKLIN V. FISHER;
ROSALIE MASSERI; GENEVA B. WOOD; VERNON A.
NOBLE; NANCY FITZGIBBONS; ANN P. CONTI; ALBERT J.
RUH; MARIA BARNABY GREENWALD

Karen Alexander, individually and on behalf of all persons
similarly situated; Dennis Drazin, Esq., individually and
on behalf of all attorneys similarly situated; and Drazin &
Warshaw, a professional corporation, individually and on
behalf of all firms similarly situated,

Appellants

*Caption amended per the Clerk's order of 10/25/95

_____

1. Deborah T. Poritz was the Attorney General for the State of New Jersey
when this suit was instituted. Since that time, Deborah T. Poritz
resigned as Attorney General and was appointed Chief Justice of the
Supreme Court of New Jersey. Subsequently, Peter Verniero was
appointed the Attorney General. Pursuant to Fed. R. App. Proc. 43(c),
Peter Verniero is automatically substituted as a party plaintiff for
Deborah T. Poritz.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(Civil No. 94-5229)

Argued: May 9, 1996

Before: GREENBERG, ALITO and McKEE, Circuit Judges

(Opinion filed: May 23, 1997)

HAROLD J. CASSIDY, ESQ. (Argued)
GREGORY R. MILNE, ESQ.
Cassidy, Foss & San Filippo
225 Broad Street
P.O. Box 896
Red Bank, NJ 07701

Attorneys for Appellants

PETER VERNIERO, ESQ.
Attorney General
JEFFREY J. MILLER, ESQ. (Argued)
ANDREA M. SILKOWITZ, ESQ.
Assistant Attorneys General
Richard J. Hughes Justice Complex
CN-112
Trenton, NJ 08625

Attorneys for Appellees, Christine
Todd Whitman and Peter Verniero

2

RONALD KEVITZ, ESQ.
Morris County Counsel
W. RANDALL BUSH, ESQ. (Argued)
First Assistant Counsel
Administration and Records Building
CN 900
Morristown, NJ 07963

Attorneys for Appellee, John Pecoraro

ROBERT E. MARGULIES, ESQ.
Marguiles, Wind, Herrington &
 Knopf
15 Exchange Place
Suite 510
Jersey City, NJ 07302

Attorneys for Amicus Curiae,
Andrea Guillian and Marilyn Gotay

RICHARD F. COLLIER, JR., ESQ.
Collier, Jacob & Mills
580 Howard Avenue
Corporate Park III
Somerset, NJ 08873

Attorney for Amicus Curiae,
The World Federation of Doctors Who
Respect Life

PAUL E. NEWELL, ESQ.
Newell & Adubato
80 Court Street
Freehold, NJ 07728

Attorneys for Amicus Curiae,
Association of Trial Lawyers of
America - New Jersey

**OPINION OF THE COURT**

McKEE, <u>Circuit Judge</u>

Karen Alexander, Dennis Drazin, Esq., and the lawfirm of Drazin and Warshaw, P.C., appeal from the district court's dismissal of their complaint under Fed R. Civ. P. 12(b)(6). Plaintiffs had alleged that New Jersey's Wrongful Death Act, N.J.S.A. 2A:31-1 <u>et seq</u>., and Survival Action Act, N.J.S.A. 2A:15-3, violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution because they deny a cause of action to the statutory beneficiaries unless a fetus survives past birth. For the reasons that follow, we disagree and will affirm the district court's dismissal of the complaint.

**I. FACTS**

On July 15, 1992, Karen F. Alexander, who was then eight and one-half months pregnant, was admitted to the Jersey Shore Medical Center to give birth to her child. The vital signs of Ms. Alexander's baby were taken only fourteen minutes prior to delivery by cesarean section, and the fetus appeared normal and healthy. Tragically, however, the child was stillborn.[2]

An autopsy was performed, and a death certificate was issued showing the date of the child's birth as July 15, 1992. The birth certificate noted the child's name was Kaylyn Elissa Alexander and that she was "stillborn" due to "cardio-vascular collapse."

On July 13, 1994, Karen Alexander filed a complaint in the Superior Court of Monmouth County, New Jersey, seeking damages individually[3] and in her capacity as

_____

2. In plaintiffs' motion for summary judgment states that the child died "while she was still in her mother's womb and before her actual birth, and was therefore declared `stillborn'." Joint Appendix, at 37. The hospital's records state that the child had "interpartum demise." <u>Id.</u>

3. In the state court action, Karen Alexander seeks recovery in her individual capacity for the emotional distress and mental suffering which resulted from the stillbirth allegedly caused by the medical malpractice of the defendants.

4

Administratrix <u>Ad Prosequendum</u> of the Estate of Kaylyn
Elissa Alexander, Deceased, under the New Jersey Wrongful
Death Act, N.J.S.A. 2A:31-1, and as General Administrator
of the Estate of Kaylyn Elissa Alexander, Deceased, under
the New Jersey Survival Action statute, N.J.S.A. 2A:15-3.
The complaint alleged that the negligence of doctors,
nurses, and other health care personnel at Jersey Shore
Medical Center had injured Ms. Alexander's baby while it
was still in her mother's womb. Ms. Alexander requested
that the Surrogate of Monmouth County issue Letters of
Administration <u>Ad Prosequendum</u> and General Letters of
Administration for the Estate of Kaylyn Elissa Alexander.
On October 18 and 31, 1994, the Surrogate denied the
request for Letters <u>Ad Prosequendum</u> because Kaylyn Elissa
had been stillborn.

On October 28, 1994, Karen Alexander and Dennis
Drazin, a New Jersey lawyer, and Drazin & Warshaw, P.C.,
a law firm, filed a class action complaint under 42 U.S.C.
§ 1983 in the United States District Court for the District of
New Jersey. The suit named Christine Todd Whitman,
individually, and as Governor of the State of New Jersey,
Deborah T. Poritz, individually, and as Attorney General of
the State of New Jersey,4 and the Surrogates of all twenty-
one counties in New Jersey as defendants. Alexander
brought the action individually, on behalf of all mothers
whose fetuses had allegedly been injured in utero by the
tortious acts of a third party and who were later stillborn,
on behalf of her own stillborn child, and on behalf of all
stillborn children who were similarly situated. The
complaint alleged violations of the Equal Protection and
Due Process clauses of the Fourteenth Amendment.
Essentially, the complaint alleged the New Jersey Wrongful
Death Act (as interpreted by the New Jersey Supreme Court
in <u>Giardina v. Bennett</u>, 545 A.2d 139 (N.J. 1988)), and the
New Jersey Survival Action Act are unconstitutional
because they deny recovery on behalf of stillborn fetuses.
Plaintiffs requested, <u>inter alia</u>, that these statutes be
declared unconstitutional, an order directing the surrogate
to issue letters of administration in the estate of Kaylyn
Elissa Alexander to Karen Alexander, and money damages.

_____

4. <u>See</u> n. 1, <u>supra.</u>

5

Drazin and Drazin & Warshaw, P.C., individually and on behalf of all attorneys and law firms (the "Drazin plaintiffs"), raised the same constitutional challenge to the statues, and alleged that their constitutional rights are violated because they are precluded from bringing wrongful death and survival actions on behalf of potential clients whose children were stillborn because of the tortious acts of third parties.

On December 11, 1995, the Governor and the Attorney General (the "State defendants") filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). The Surrogates (the "County defendants") thereafter moved to join in the state defendants' 12(b)(6) motion. Plaintiffs then cross-moved for class certification and for summary judgment.

Subsequently, fifteen of the Surrogates executed Consent Orders of Judgment.5 Following argument, the district court granted the State defendants' motion to dismiss. Consequently, plaintiffs' motions for class certification and for summary judgment were denied. This appeal followed.6

## II. STANDARD OF REVIEW

We exercise plenary review over a district court's order dismissing a complaint under Fed. R. Civ. P. 12(b)(6). Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). We must determine if plaintiff may be entitled to relief under any reasonable reading of the pleadings, Holder v. City of Allentown, 987 F.2d 188, 193 (3d Cir. 1993), assuming the truth of all the factual allegations in the complaint. D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1367 (3d Cir. 1992). A court may dismiss a

---

5. By those Consent Orders, the fifteen Surrogates agreed not to file any further submissions opposing the factual and legal contentions of the plaintiffs and agreed to be bound by all future interlocutory and final orders of the district court. (112A-147A).

6. Plaintiffs' section 1983 complaint sought money damages (Count V) and declaratory and injunctive relief (Counts I, II, III and IV). However, plaintiffs are not appealing the district court's dismissal of their complaint as it relates to their claim for money damages. See Notice of Appeal (Joint Appendix, at 148).

complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).7

## III. DISCUSSION

## A. THE STATUTORY SCHEME

It is helpful to briefly discuss the two causes of action at issue in this dispute before proceeding with our analysis.

## 1. WRONGFUL DEATH ACTION.

The fundamental purpose of a wrongful death action is to compensate survivors for the pecuniary losses they suffer because of the tortious conduct of others. Alfone v. Sarno, 403 A.2d 9, 12 (N.J. Super. Ct. App. Div. 1979), modified on other grounds, 432 A.2d 857 (N.J. 1979). This cause of action was not recognized at common law and is purely a creature of statute. Schmoll v. Creecy, 254 A.2d 525, 527 (N.J. 1969). New Jersey's Wrongful Death Act provides, in relevant part, as follows:

When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime.

N.J.S.A. 2A:31-1.

_____

7. Our standard of review on an appeal from a denial of summary judgment is plenary, Waldorf v. Shuta, 896 F.2d 723, 728 (3d Cir. 1990), and our review of class certification determinations is normally limited to whether the district court abused its discretion. Lusardi v. Xerox Corp., 975 F.2d 964, 973 (3d Cir. 1992). However, because we find that the district court's dismissal of the complaint under Fed. R. Civ. P. 12(b)(6) was proper, we need not address the propriety of its denial of plaintiffs' motions for summary judgment and for class certification.

An award of damages in a wrongful death action "is not a matter of punishment for an errant defendant or of providing for decedent's next of kin to a greater extent than decedent himself would have been able, but is rather a replacement for that which decedent would likely have provided and no more." Hudgins v. Serrano, 453 A.2d 218, 224 (N.J. App. Div. 1982). The amount of recovery is based upon the contributions, reduced to monetary terms, which the decedent might reasonably have been expected to make to his or her survivors. Alfone, 402 A.2d at 12. Damages are awarded for pecuniary loss only, and not for injury to feelings, mental suffering, or loss of society or companionship. Id. However, economic dependency is not the sole measure of the damages. Minor children may recover the pecuniary value of the loss of care, guidance and advice of a parent during their minority. Id. In addition, the wrongful death statute permits the award of hospital, medical and funeral expenses. N.J.S.A. 2A:31-5.

A wrongful death action is available when a child is killed by the tortious act of another.

When parents sue for the wrongful death of a child, damages should not be limited to the well-known elements of pecuniary loss such as the loss of the value of the child's anticipated help with household chores, or the loss of anticipated direct financial contributions by the child after he or she becomes a wage earner. . . . [I]n addition, the jury should be allowed, under appropriate circumstances, to award damages for the parents' loss of their child's companionship as they grow older, when it may be most needed and valuable, as well as the advice and guidance that often accompanies it.

Green v. Bittner, 424 A.2d 210, 211 (N.J. 1980). However, damages for these additional items are confined to their pecuniary value, not including the value of the emotional loss. Id.

Damages for the wrongful death of an infant are likewise recoverable and, "like wrongful-death damages generally, are limited to economic matters[ ] [such as] . . . the pecuniary value of the child's help with household chores,

8

the pecuniary value of the child's anticipated financial contributions, and the pecuniary value of the child's companionship . . . as the parents grow older." Carey v. Lovett, 622 A.2d 1279, 1291 (N.J. 1993)(citing Green, 424 A.2d at 211). However, "[t]he problem in evaluating the economic value of a newborn's life is obvious. No one can know much, if anything, about the infant and his or her future economic worth. That difficulty, however, should not preclude any award. Some award is appropriate even though the inferences, and estimate of damages, are based on uncertainties." Carey, 622 A.2d at 1291.

The particular aspect of New Jersey's wrongful death action that gives rise to the instant controversy arises from the holding in Giardina v. Bennett, 545 A.2d 139 (N.J. 1988). There, the New Jersey Supreme Court held that the New Jersey Wrongful Death Act does not permit recovery for damages attributable to the wrongful death of a fetus. However, even though the parents cannot recover for the death of the fetus in such cases, they can recover damages for their own injuries that result from the tortious conduct. "[M]edical malpractice causing an infant stillbirth constitutes a tort against the parents, entailing the direct infliction of injury, their emotional distress and mental suffering, for which they are entitled to recover compensatory damages." Id. at 139.

**2. SURVIVAL ACTION.**

At common law, a right to bring an action in trespass was personal and died with the person. Canino v. New York News, Inc., 475 A.2d 528, 529 (N.J. 1984). Accordingly, survival actions, like wrongful death actions, did not exist. Soden v. Trenton and Mercer County Trust Co., 127 A. 558, 559 (N.J. 1925). Survival action statutes modify the common law rule and provide that the personal right of action in trespass survives to the personal representative of the decedent's estate. Id., at 559.

New Jersey's Survival Action statute provides as follows:

 Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the

9

trespasser, and recover their damages as their testator or intestate would have had if he was living.

In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover all reasonable funeral and burial expenses in addition to damages accrued during the lifetime of the deceased.

N.J.S.A. 2A:15-3. A survival action "gives executors or administrators a right of action for tortious injury or damage to the deceased or his property incurred prior to death." Alfone, 403 A.2d at 13. The major item of damages in a survival action (aside from funeral and burial expenses) is recovery for the decedent's pain and suffering between the time of injury and the time of death. However, an award for pain and suffering is appropriate only for pain and suffering that is conscious. Id. Recovery is also permitted for "hedonic damages," i.e., loss of enjoyment of life. Eyoma v. Falco, 589 A.2d 653, 658 (N.J. Super. Ct. App. Div. 1991).

The court in Giardina did not address rights of recovery on behalf of stillborn children under New Jersey's survival action. However, the district court here found that "it is clear by the implications of the holding in Giardina and by the language of the survival action statute itself that the New Jersey Legislature did not intend to provide the parents of unborn or stillborn fetuses with a statutory cause of action for survival." Dist. Ct. Op. at 13. Neither party to this appeal disagrees with that portion of the district court's holding, and we will therefore assume that New Jersey's survival action, like the wrongful death action, is limited to situations where the fetus survives until after birth.

**B. KAREN ALEXANDER'S CLAIM ON BEHALF OF HER CHILD AND ALL OTHER SIMILARLY SITUATED STILLBORN FETUSES.**

Ms. Alexander asserts a claim under 42 U.S.C. § 1983 on behalf of her stillborn child, Kaylyn Elissa, and all stillborn

10

children and fetuses, alleging that the exclusion of stillborn children and fetuses from the coverage of New Jersey's wrongful death and survival actions violates the United States Constitution. 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

Ms. Alexander's claim on behalf of her stillborn child is grounded in the Equal Protection Clause of the Fourteenth Amendment, which provides that: "No State shall .. . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.8 In essence, Ms. Alexander argues that her stillborn child was a "person" who is denied the equal protection of the law because, under New Jersey law, wrongful death and survival actions can be maintained on behalf of children who are injured prenatally, are born and then die as a result of the prenatal injury, whereas, under New Jersey law, wrongful death and survival actions cannot be maintained on behalf of stillborn children.

However, Ms. Alexander can only establish a claim on behalf of her child under the Fourteenth Amendment if her child (and others similarly situated) fall(s) within the protections afforded "person[s]" as that term is used in the Fourteenth Amendment, and it is clear it does not. The

_____

8. Our discussion of the claim brought on behalf of the stillborn child assumes that Karen Alexander has standing to assert the claim.

11

Supreme Court has already decided that difficult question for us in Roe v. Wade, 410 U.S. 113, 158 (1973). There, the Court expressly held that "the word `person,' as used in the Fourteenth Amendment does not include the unborn." The Court held that "person" has "application only postnatally." Id. at 157. That constitutional principle was more recently re-affirmed in Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 846 (1992). There, Justice Stevens, writing separately from the joint opinion of Justices O'Connor, Kennedy and Souter, wrote that, as a matter of federal constitutional law, a fetus is a "developing organism that is not yet a `person' " and"does not have what is sometimes described as a `right to life.' " Id. at 913 (Stevens, J., concurring in part and dissenting in part). This principle "remains a fundamental premise of our constitutional law governing reproductive autonomy." Id. at 914. Since the unborn are not persons within the meaning of the Fourteenth Amendment, no claim alleging an equal protection violation can be brought on behalf of the stillborn child.9

Of course, as noted above, our inquiry must accept all well pleaded facts as true and we note that the complaint avers that the stillborn child was a human being from the moment of conception.10 However, even if that is

_____

9. Because the unborn are not persons within the meaning of the Fourteenth Amendment, it follows that the unborn are not encompassed within the meaning of the term "person" or"citizen" for purposes of 42 U.S.C. § 1983. See Reed v. Gardner, 986 F.2d 1122, 1127-28 (7th Cir. 1993).

10. In ¶ 40 of the complaint it is averred that:

As a matter of fact a child at every age of gestation from conception to birth is a complete, separate and irreplaceable human being and the daughter of Karen F. Alexander and all mothers similarly situated are actual human beings who have relationships with their mothers carrying them. This relationship between these two separate, complete individual human beings is in actual existence throughout pregnancy. As a matter of fact, a child can experience pain beginning at eight weeks after conception up to the time of actual birth. As a matter of fact, Karen F. Alexander's baby daughter and all children similarly situated from ages eight weeks after conception experience pain and suffer during trauma or as a result of injury or the damage to bodily systems necessary for the continuance of the life of the child.

12

established as a matter of fact, we must look to controlling law to determine what effect, if any, that fact has upon our analysis. Our inquiry is not a factual one. It is a legal one. The question is not whether a stillborn child is a human being from the moment of conception, but whether that unborn "human being" is included within the meaning of "person" contained in the Fourteenth Amendment. That legal question was resolved over twenty-four years ago when the Supreme Court decided Roe. In fact, the Court there specifically differentiated between the factual inquiry into when life begins, and the legal issue of the scope of the Fourteenth Amendment. The Court stated:

We need not resolve the difficult question of when life begins. When those trained in the respective disciplines of medicine, philosophy, and theology are unable to arrive at any consensus, the judiciary, at this point in the development of man's knowledge, is not in a position to speculate as to the answer.

410 U.S. at 159. Thus, it is immaterial that the complaint pleads that a stillborn child is a human being from conception.

Plaintiffs' reliance upon the advances of medical technology is likewise beside the point. Plaintiffs contend that Roe was based in part upon limited medical and scientific knowledge and that technological advances since Roe was decided allow us to study human development from the molecular stage. In fact, plaintiffs claim that the Roe Court provided for an evolving jurisprudence to keep pace with the state of medicine and science when it wrote "the judiciary, at this point in the development of man's knowledge, is not in a position to speculate as to the answer" to the question of when human life begins. See Appellants' Brief, at 41-42. However, no advance in technology or science can authorize us to depart from well established legal precedent, and we do not believe the Supreme Court intended to grant a license to do so in Roe.

Similarly, plaintiffs' reliance on what they believe to be an essential underpinning of the New Jersey Supreme Court's decision in Smith v. Brennan, 157 A.2d 497 (N.J. 1960), does not make the constitutional claim raised on behalf of

13

the stillborn child a cognizable one. In <u>Brennan</u>, the New Jersey Supreme Court held that children who survive a prenatal injury can bring a cause of action in tort against the person who caused the prenatal injury.11 The court explained its holding by noting that "[m]edical authorities have long recognized that a child is in existence from the moment of conception, and not merely a part of its mother's body."12 <u>Id.</u> at 502.

The plaintiffs attempt to leverage this language by arguing that the New Jersey Supreme Court has recognized as scientific fact that an unborn child is a human being from the moment of conception. However, even assuming the court has recognized this as fact, it does not follow that that court has also recognized the unborn child to be a

_____

11. <u>Smith v. Brennan</u> overruled <u>Stemmer v. Kline</u>, 26 A.2d 489 (N.J. 1942), which did not allow a surviving a child a cause of action in tort for prenatal injuries. <u>Stemmer v. Kline</u> declined to recognize a cause of action for prenatal injury based, in large part, upon <u>Dietrich v. Inhabitants of Northampton</u>, 138 Mass. 14, 52 Am.Rep. 242 (Sup. Jud. Ct. 1884), which was a wrongful death case where the child was apparently stillborn. <u>Dietrich</u> held that Massachusetts' wrongful death statute was inapplicable to a fetus, based on its view that a child is part of its mother before birth and does not have a separate existence or personality.

12. Perhaps realizing the import of its holding that a child is in existence from the moment of conception, the New Jersey Supreme Court qualified its language. The court wrote:

 The semantic argument whether an unborn child is a "person in being" seems to us to be beside the point. There is no question that conception sets in motion biological processes which if undisturbed will produce what every one will concede to be a person in being. If in the meanwhile those processes can be disrupted resulting in harm to the child when born, it is immaterial whether before birth the child is considered a person in being. And regardless of analogies to other areas of the law, justice requires that the principle be recognized that a child has a legal right to begin life with a sound mind and body. If the wrongful conduct of another interferes with that right, and it can be established by competent proof that there is a causal connection between the wrongful interference and the harm suffered by the child when born, damages for such harm should be recoverable by the child.

<u>Smith</u>, 157 A.2d at 503.

14

"person" under the Fourteenth Amendment. Moreover, even if it had, it should be clear that no such holding could contravene or reverse the contrary holding of the United States' Supreme Court. Quite simply, a state cannot "declare a fetus a person" and thereby add "new persons to the constitutional population." Ronald Dworkin, Unenumerated Rights: Whether and How Roe Should Be Overruled, 59 U. CHI. L. REV . 381, 400. In addition, Smith was decided on common law principles and created a common law remedy for a surviving child harmed by a prenatal injury. No federal constitutional principles were implicated in that court's analysis.

The short answer to plaintiffs' argument is that the issue is not whether the unborn are human beings, but whether the unborn are constitutional persons.13  It is beyond question that medical and scientific knowledge has advanced significantly since Roe. However, even with those advances, the Supreme Court has consistently adhered to Roe's holding that the unborn are not persons under the Fourteenth Amendment. See Planned Parenthood of Southeastern Pennsylvania, 505 U.S. at 855-61. Therefore, plaintiffs' argument that Roe was based on imperfect science is to no avail.14

_____

13. The phrase "constitutional person" is Ronald Dworkin's. Ronald Dworkin, Unenumerated Rights: Whether and How Roe Should Be Overruled, 59 U. CHI. L. REV . 381, 398.

14. Interestingly, Justice O'Connor, writing for the Court in Planned Parenthood v. Casey, clearly acknowledged the advances in medical knowledge since Roe. She wrote:

"We have seen how time has overtaken some of Roe's factual assumptions: advances in maternal health care allow for abortions safe to the mother later in pregnancy than was true in 1973, and advances in neonatal care have advanced viability to a point somewhat earlier. But these facts go only to the scheme of time limits on the realization of competing interests, and the divergences from the factual premises of 1973 have no bearing on the validity of Roe's central holding, that viability marks the earliest point at which the State's interest in fetal life is constitutionally adequate to justify a legislative ban on nontherapeutic abortions.

Planned Parenthood, 505 U.S. at 860 (citations omitted).

15

Accordingly, the district court properly granted a 12(b)(6) dismissal of the equal protection claim raised on behalf of the stillborn child.

## C. KAREN ALEXANDER'S CLAIM ON BEHALF OF HERSELF AND OTHER SIMILARLY SITUATED MOTHERS.

Besides asserting a claim on behalf of her stillborn child, Karen Alexander asserts a claim on her own behalf and on behalf of all mothers whose children were stillborn because of the tortious conduct of others. She claims that her interest in her relationship with her unborn child during pregnancy is a fundamental interest protected by the United States Constitution and that the challenged statutes violate both the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

### 1. THE DUE PROCESS CLAIM.

The Due Process Clause not only requires that the government follow appropriate procedures when it seeks to "deprive any person of life, liberty or property," it also prevents "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). Thus, the Due Process Clause has a substantive component which guarantees that "all fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion by the States." Planned Parenthood of Southeastern Pennsylvania, 505 U.S. at 847 (quoting Whitney v. California, 274 U.S. 357, 373 (1927)(Brandeis, J., concurring)).

Although the "outer limits of the substantive sphere of liberty which the Fourteenth Amendment protects" have not been defined, Id., at 848, certain protected liberties fall within the ambit of protection. Thus, those to whom the Amendment applies have a right to be free

from bodily restraint but also the right . . . to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the

16

dictates of [their] own conscience[s], and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

Board of Regents v. Roth, 408 U.S. 564, 572 (1972) (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923)).

In addition, the Constitution "promise[s] .. . that there is a realm of personal liberty which the government may not enter." Planned Parenthood of Southeastern Pennsylvania, 505 U.S. at 847. The result is a right of "personal privacy, or a guarantee of certain areas or zones of privacy[.]" Roe, 410 U.S. at 152. The rights included within that zone are deemed "fundamental" and include "activities relating to marriage", "procreation", "contraception", "family relationships" and "child rearing and education." Id. at 152-53. They therefore involve "the most intimate and personal choices" a person can make in his or her lifetime. They include "choices central to the liberty protected by the Fourteenth Amendment." Planned Parenthood of Southeastern Pennsylvania, 505 U.S. at 851.

"The first step in any substantive due process review is to determine the standard of review." Sammon v. New Jersey Bd. of Med. Exam's, 66 F.3d 639, 643-44 (3d Cir. 1995). Ms. Alexander argues that we must give these New Jersey statutes strict scrutiny because they impact upon a woman's "relationship" with an unborn fetus, and that relationship is within this protected zone of privacy included in the substantive component of the Due Process Clause.

Where fundamental rights or interests are involved, a state regulation limiting these fundamental rights can be justified only by a compelling state interest and legislative enactments must be narrowly drawn to express only the legitimate state interests at stake. Roe, 410 U.S. at 154 (citations omitted). Therefore, state limitations on a fundamental right such as the right of privacy are permissible only if they survive strict constitutional scrutiny. Planned Parenthood, 505 U.S. at 929 (Blackmun, J., dissenting)(citing Griswold v. Connecticut, 381 U.S. 479, 485 (1965)). However, where fundamental rights or interests are not implicated or infringed, state statutes are

17

reviewed under the rational basis test. That is "the test traditionally applied in the area of social or economic legislation." Roe, 410 U.S. at 173 (Rehnquist, J., dissenting)(citing Williamson v. Lee Optical Co., 348 U.S. 483, 491 (1955)). Under rational basis review, "a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature could rationally conclude was served by the statute." Sammon, 66 F.3d at 645.

Ms. Alexander argues that her relationship with her unborn child during pregnancy is itself a fundamental interest, and that these statutes should receive strict scrutiny because they impact upon that relationship. However, we need not now determine whether a mother's relationship with her unborn child during pregnancy is a fundamental interest because the New Jersey statutes at issue here do not affect Ms. Alexander's relationship with her unborn child. A mother's relationship with her fetus is exactly the same whether or not she can bring a wrongful death or survivor action. It is not the relationship that is affected here, it is the ability to recover for the loss of that relationship.

Neither the Wrongful Death Act nor the Survival Action Act interfered with any decision Karen Alexander made or might have made about her stillborn child. It is impossible for us to imagine that any such decision would be the least bit influenced by whether or not a mother could bring a wrongful death or survival action to recover damages for the loss of a fetus. Ms. Alexander's assertion of a constitutionally impermissible interference with a fundamental interest is grounded in her argument that stillborn children and fetuses are being denied the protection of New Jersey's tort law. The purpose of those laws, she argues, "is the deterrence of conduct which injures and kills others, and the promotion of caution to protect health and life." Appellants' Brief at 4. The denial of the tort law's protection is alleged to be the resulting infringement upon her fundamental interest in her relationship with her stillborn child. Appellants' Brief at 32.

However, that argument misstates the reality of New Jersey's tort law system. The wrongful death and survival

18

statutes do preclude Ms. Alexander from instituting certain kinds of law suits on her own behalf, and on behalf of her unborn child. However, she is not being denied the protection of the state's tort law. She has a tort remedy and that remedy is a common law cause of action to recover for emotional distress and any injury to herself when medical malpractice causes the stillbirth of a baby.

The gravity of such negligence, the foreseeability of parental suffering, and the genuineness of injury and loss present a compelling case for recognition of the direct injury to the parents.

. . . We thus conclude that the wrong committed by a doctor in negligently causing the pre-birth death of an infant constitutes a tort against the parents.

Giardina, 545 A.2d at 141-42. Thus, contrary to Ms. Alexander's assertions here, Giardina did not leave pregnant women defenseless against negligence that results in the death of a fetus. In fact, that court began its analysis noting: "[b]y recognizing such a cause of action [in tort] we protect the interests affected by the tortious conduct resulting in the death of an infant before birth." Id. at 139. Those are the same interests that are implicated by wrongful death and survival actions. Id.[15]

Karen Alexander also relies heavily upon Levy v. Louisiana, 391 U.S. 68 (1968), its companion case, Glona v. American Guar. & Liab. Ins. Co., 391 U.S. 73 (1968), and Weber v. Aetna Cas. and Sur. Co., 406 U.S. 164 (1972). However, those cases addressed the constitutionality of legislative enactments that discriminated against persons on the basis of having been born out of wedlock. They did not implicate substantive due process. Instead, they were equal protection challenges to statutory classifications.

_____

15. We do not mean to suggest that the Fourteenth Amendment requires a state to provide a tort remedy for prenatal injuries. Indeed, that assertion is endemic in Ms. Alexander's attempt to fashion a Due Process right from New Jersey's purported failure to protect her fetus from the negligence of health care providers. Rather, we mention the aspects of tort law that serve to protect her own bodily integrity, and the health of the fetus, to illustrate the weakness in her argument. See Parham v. Hughes, 441 U.S. 347 (1979), infra.

Levy invalidated the provisions of a state statute that excluded illegitimate children from the class of children entitled to recover for a parent's death under Louisiana's wrongful death statute and Glona involved the same statute's exclusion of a mother from recovering for the wrongful death of her illegitimate son. Weber invalidated the provisions of Louisiana's workman's compensation statute which excluded unacknowledged illegitimate children from recovering for the death of their wage-earner father.

In deciding Levy, the Supreme Court recognized that the illegitimate children's right to recover "involve[s] the intimate, familial relationship between a child and his own mother," Levy, 391 U.S. at 71. That recognition informed the decisions in Glona and Weber. However, the interest at issue in each of those cases was the classification of the child's legitimacy, "and the inability of both parent and child to reverse the burdens imposed by illegitimacy." Laurence H. Tribe, AMERICAN CONSTITUTIONAL LAW § 16-24, at 1554 (2d ed. 1988). The cases were not decided upon the basis of the family relationship as Ms. Alexander argues. In Parham v. Hughes, the Court explained the basis of Levy and its progeny.

The basic rationale of these decisions is that it is unjust and ineffective for society to express its condemnation of procreation outside the marital relationship by punishing the illegitimate child who is in no way responsible for his situation and is unable to change it.

441 U.S. at 352.16

In Parham, the Court upheld a Georgia statute that restricted the class of persons who were entitled to bring wrongful death actions to recover for the death of an illegitimate child. Under that statute, only the mother, and those fathers who had legitimated the child in the manner

---

16. Ms. Alexander criticizes the district court for relying upon Roe while not even citing Levy. See Appellant's Br. at 40. However, it is easy to understand why the district court did not cite Levy, Glona, or Weber. Those cases are simply not relevant to the issues raised here.

20

prescribed by statute, could file suit. The plaintiff was the father of an illegitimate child whom he had not legitimated. The father had, however, signed the child's birth certificate and had contributed to the child's support. When the child and its mother were killed in an auto accident, the father brought a wrongful death action in state court. The defendant moved for summary judgment on the grounds that the applicable statute precluded the suit because plaintiff had not legitimated the child, but the trial court denied the motion on the grounds that the statute violated both the Equal Protection and Due Process Clauses. On appeal, the Georgia Supreme Court reversed, and the Supreme Court thereafter accepted the appeal from that decision to decide "whether [the] statutory scheme violates the Equal Protection or Due Process Clause of the Fourteenth Amendment by denying . . . the right to sue for the child's wrongful death." Id. at 349. The Court refused to apply the heightened scrutiny it had applied in Weber, and upheld the statute using the "rational means" test, and the concomitant presumption of validity. The Court reasoned that the classification established under the statute was a rational means of limiting tort claims, as well as false claims of paternity. The Court focused primarily upon the classification, and did not base its analysis upon whether the statute deprived plaintiff of a fundamental right noting -- in passing -- "[i]t can not seriously be argued that a statutory entitlement to sue for the wrongful death of another is itself a `fundamental' or constitutional right." Id. at 358. Ms. Alexander's Equal Protection and Due Process claims must fail for the same reason. The statutes do not interfere with her relationship with her fetus as she claims, nor do they interfere with a fundamental right.

Parents do, of course, have a fundamental liberty interest in the care and custody of their children, Santosky v. Kramer, 455 U.S. 745, 753 (1982); see also Lehr v. Robertson, 463 U.S. 248, 258 (1983)("[T]he relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection."). Moreover, there is an intense emotional bond consisting of the great joy and hope that naturally develops between a mother and the child she is carrying in her womb. Indeed, it is the awareness of the reality and intensity of the mother-fetal

21

bond which apparently led the New Jersey Supreme Court to create a parental right of recovery for the emotional distress suffered by the parents when medical malpractice causes a stillbirth. Giardina, 545 A.2d at 140.

Karen Alexander's actual complaint is with the tort remedy that New Jersey has provided. She would prefer to be able to institute a wrongful death and survival action, either in lieu of, or in addition to, the tort remedy first recognized in Giardina v. Bennett.17 Since there are rather severe limitations on the emotional distress that one can recover for under Giardina, the concern is that the mother of a stillborn will not be able to show the degree of severity necessary to recover, in spite of the fact that negligence and causation are shown. However, the fact that a mother may not be able to prove the degree of emotional distress necessary to recover in a given case does not mean that mothers whose children are stillborn because of the tortious conduct of others are denied the protection of New Jersey's tort law.

Since New Jersey has not infringed upon any relationship Ms. Alexander had with her stillborn infant, this substantive due process claim does not merit strict scrutiny review. Accordingly, we inquire only to see if it is a rational means of achieving a legitimate state interest. When subjecting a state statute to rational basis review,"a court . . . is not entitled to second guess the legislature on the factual assumptions or policy considerations underlying the statute." Sammon, 66 F.3d at 645. The only inquiry permitted "is whether the legislature rationally might have believed that the predicted reaction would occur or that the desired end would be served." Id. It is up to the person challenging the statute to "convince the court that the legislative facts on which the classification[of the statute] is apparently based could not reasonably be conceived as

_____

17. To prove a claim for emotional distress caused by the tortiously-caused death of a fetus, "the mother must prove that she suffered emotional distress so severe that it resulted in physical manifestations or that it destroyed her basic emotional security." Carey v. Lovett, 622 A.2d 1279, 1288 (N.J. 1993). "The worry and stress . .. [attendant] upon the birth of every child will not suffice. Nor will the upset that every parent feels when something goes wrong in the delivery room." Id.

22

true by the governmental decisionmaker." Id. at 645-46 (quoting Vance v. Bradley, 440 U.S. 93, 111 (1979)). A statute "withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature rationally could conclude was served by the statute." Id. at 645.

One cannot seriously argue that New Jersey has no interest in defining who is entitled to recover for injuries and in setting limits on tort recovery for wrongful death. The requirement that the child on whose behalf a wrongful death and survival action is instituted have been born alive is rationally related to that interest. New Jersey has chosen to draw a bright line that eliminates the nearly impossible problems of proof inherent in such actions when injury to a fetus is at issue. Absent the limitation in these statutes it would be difficult, if not impossible, to prohibit a wrongful death or survival action no matter how early the fetus was in its development. This would mean that one could recover if it could be established that a zygote would have developed had not an alleged tortfeasor injured a developing fertilized egg seconds after the union of sperm and egg. Although a state could permit recovery for an injury to that which would later develop into a fetus, it is certainly not required to do so under the Due Process or Equal Protection Clauses. Limiting such actions in the manner that New Jersey has chosen is both reasonable and practical. Ms. Alexander argues that including stillborn children and fetuses within the coverage of wrongful death and survival actions would not harm New Jersey's legitimate interest in setting limits on tort recovery. She may be correct, but that is not for us to determine. Her disagreement is with the legislative policy decision about where the line should be drawn and "those disputes are not legally relevant under substantive due process jurisprudence." Id. at 647.

## 2. THE EQUAL PROTECTION CLAIM.

The Equal Protection Clause of the Fourteenth Amendment "announces a fundamental principle: the State must govern impartially," New York Transit Authority v. Beazer, 440 U.S. 568, 587 (1979), and "directs that `all persons similarly circumstanced shall be treated alike.' "

23

Plyler v. Doe, 457 U.S. 202, 216 (1982)(quoting F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920)). Therefore, "[g]eneral rules that apply evenhandedly to all persons within the jurisdiction unquestionably comply" with the Equal Protection Clause. Beazer, 440 U.S. at 587. Only when a state "adopts a rule that has a special impact on less than all persons subject to its jurisdiction" does a question arise as to whether the equal protection clause is violated. Id. at 587-88.

However, the clause does not require that things which are different in fact be treated in law as though they are the same. Plyler, 457 U.S. at 216. "The initial discretion to determine what is `different' and what is `the same' resides in the legislatures of the States." Id. Accordingly, "the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others." McGowan v. Maryland, 366 U.S. 420, 425 (1961). Therefore, "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Federal Communications Comm. v. Beach, 508 U.S. 307, 313 (1993).18

Ms. Alexander argues that New Jersey's exclusion of the stillborn and fetuses from coverage under the wrongful death and survival acts creates two distinct classes.19 The

---

18. Federal Communications Comm. v. Beach involved a challenge under the Due Process Clause of the Fifth Amendment to a provision of the Cable Communications Policy Act by operators of satellite master antenna and television facilities. Because the Fifth Amendment imposes on the federal government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment, Schweiker v. Wilson, 450 U.S. 221, 226 n. 6 (1981), the Due Process Clause of the Fifth Amendment has an "implied equal protection guarantee." Beach, 508 U.S. at 312.

19. Actually, Karen Alexander posits four classes. The first class is the largest class and is composed of all mothers who are pregnant. The second class is contained in the first class and is composed of pregnant mothers whose children sustain a prenatal injury. The third class is a

24

first class consists of all mothers whose injured fetuses are born but die as a result of the prenatal injury. The second class -- the Karen Alexander class -- consists of all mothers whose fetuses are tortiously injured in utero and die in the womb or are stillborn as a result. New Jersey law allows a wrongful death and survival action to mothers in the first class, but not to those in the second class. That much is not disputed; however, Ms. Alexander's argument fails because she also argues that there is no difference between the mothers in those two classes. She asserts that mothers in her class sustained "the same loss as other mothers to whom New Jersey gives the claim." Appellants' Brief, at 19. While that may be true insofar as it states the similarity between the respective tragedies, it is not true insofar as it attempts to foster a principle of Equal Protection jurisprudence.

Ms. Alexander's Equal Protection claim parallels her Due Process claim in that she argues that New Jersey's classification affects fundamental rights, i.e., a mother's interest in her relationship with her child. However, as discussed earlier, Karen Alexander has not demonstrated how these statutes affect her relationship with her unborn child. Therefore, her own Equal Protection challenge is also entitled only to "rational basis" scrutiny. The rational basis standard is a "relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314 (1976). Although New Jersey could have chosen to afford all mothers whose fetuses are injured a cause of action under the challenged statues, the wisdom of not doing so is not before us. It is the legality of

---

subclass of the second class and consists of pregnant mothers whose children sustain a prenatal injury resulting in the death of a child after a live birth. The fourth class is also a subclass of the second class and is the Karen Alexander class composed of all pregnant mothers whose children sustain a prenatal injury and are stillborn. See Appellants' Brief, at 16-17. However, we do not think that delineating four classes is necessary for the purposes of this equal protection argument. It is the third and fourth classes which are significant here.

25

not doing so that we must decide, and we do not think the distinction that the state has drawn is illegal.

[R]ational basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. Nor does it authorize the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that affect neither fundamental rights nor proceed along suspect lines. For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. . . .

A statute is presumed constitutional . . . and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations -- illogical, it may be, and unscientific.

Heller v. Doe, 509 U.S. 312, 319-21 (1993). The "standard of rationality . . . must find some footing in the realities of the subject addressed by the legislation." Id. at 321. Only when the classification "rests on grounds wholly irrelevant

26

to the achievement of the State's objectives" does a statute fail rational basis review. Id. at 323.

Apparently, there is no legislative history to assist us in determining if the challenged statutes are rationally related to a legitimate state interest. However, the assumed legislative bases for the Wrongful Death Act were extensively discussed in Giardina v. Bennett. There, the New Jersey Supreme Court analyzed that statute and concluded that the legislature defined the wrongful death action with the intent of limiting it to the class of people considered persons by the common law. As noted earlier, the New Jersey legislature was doing nothing more than setting limits on tort recovery in those cases when a person is killed by the tortious conduct of another. Accordingly, we find no violation of the Equal Protection Clause.

## D. THE CLAIM OF THE DRAZIN PLAINTIFFS.

As noted above, Ms. Alexander's attorney and his law firm (the Drazin plaintiffs) also challenge these statutes. They allege a constitutional violation of their rights because they are precluded from bringing wrongful death and survival actions on behalf of Karen Alexander and other potential clients whose children were stillborn because of the wrongful acts of third parties. We are aware of no constitutional provision that creates a right in attorneys to bring lawsuits under the circumstances involved here. Moreover, the district court quite properly concluded that Ms. Alexander is the party best suited to challenge these statutes and held that the Drazin plaintiffs lack standing. See Amato v. Wilentz, 952 F.2d 752 (3d Cir. 1991).

In Wilentz, we noted that an inquiry into standing also encompasses prudential considerations.

Where a plaintiff asserting third party standing has suffered concrete, redressable injury (that is, the plaintiff has Article III standing), federal courts are to examine at least three additional factual elements before allowing the suit to proceed. First, the court must examine the relationship between the plaintiff and the third party whose rights are asserted; second, the court must consider the ability of the third party to

27

advance its own rights -- whether some obstacle impedes the rightholder's own suit; and third, the court must inquire into the impact on third party interests -- whether the plaintiff and the third party have consistent interests.

952 F.2d at 749 (citations omitted). We added that a court may consider other "factors [that] may also be relevant to the ultimate prudential consideration." Id. at 750. The nature of the claim asserted by the Drazin plaintiffs would fall woefully short of these considerations even if it comported with the more formal "case and controversy" components of Article III standing. Indeed, whatever loss the Drazin plaintiffs may assert here is reduced to such insignificance (if not absurdity) by Ms. Alexander's tragic loss that we can not help but wonder how the Drazin plaintiffs can seriously challenge the district court's ruling as to their lack of standing. Moreover, since we conclude that there is no constitutional violation here, the Drazin plaintiffs' marginal claim fails in any event.

## IV. CONCLUSION

In concluding, we wish to stress that we do not intend minimize the immensity of Ms. Alexander's tragic loss. Any parent would appreciate that it is of monumental proportion. However, our task is to apply those principles that control and guide legal analysis and thereby determine if the district court erred in dismissing the suit that was brought under section 1983. Though we understand how a parent would conclude that the interests at stake here are fundamental, that is not the test we must apply. "Fundamental interests" in constitutional adjudication are not equivalent to general interests of "particular human or societal significance." Price v. Cohen, 715 F.2d 87, 93 (3d Cir. 1983)(citing San Antonio Sch. Dist. v. Rodriguez, 411 U.S. 1, 33 (1973). Rather, fundamental interests are those which "have their source, explicitly or implicitly, in the Constitution." Id. (citing Plyler, 457 U.S. at 217 n.15 (1982).

For the reasons set forth above we hold that Ms. Alexander has failed to establish that New Jersey's limitation on wrongful death and survival actions is

28

unconstitutional, and we therefore affirm the judgment of the district court.

29

ALITO, <u>Circuit Judge</u>, concurring.

I am in almost complete agreement with the court's opinion, but I write to comment briefly on two points. First, I think that the court's suggestion that there could be "human beings" who are not "constitutional persons" (Maj. Op. 14-15) is unfortunate. I agree with the essential point that the court is making: that the Supreme Court has held that a fetus is not a "person" within the meaning of the Fourteenth Amendment. However, the reference to constitutional non-persons, taken out of context, is capable of misuse.

Second, I think that our substantive due process inquiry must be informed by history. It is therefore significant that at the time of the adoption of the Fourteenth Amendment and for many years thereafter, the right to recover for injury to a stillborn child was not recognized. <u>See Giardina v. Bennett</u>, 545 A.2d 139, 143 (N.J. 1988); <u>Smith v. Brennan</u>, 157 A.2d 497, 498 (N.J. 1960).

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals for the Third Circuit</u>

30